**MacDONALD et al. v. SANDERS et ux.**

**No. 6321.**

Court of Civil Appeals of Texas. Texarkana.

Nov. 27, 1947.

Rehearing Denied Dec. 18, 1947.

Pollard, Lawrence, Blackburn, Reeves & Jarrel, of Tyler, for appellants.

Lassater, Spruiell, Lowry, Potter & Lasater, of Tyler, and Jones & Jones, of Mineola, for appellees.

HARVEY, Justice.

On August 19, 1940, Ray Sanders and wife executed an oil and gas lease to H. D. MacDonald and F. M. Morrison covering lots 20, 21, 22, and 23 of the Reese Addition to the town of Hawkins, Texas. All of the plaintiffs claim under this lease. Apparently Sanders, MacDonald, and Morrison thought that Sanders owned all of the minerals under the lots in question, but actually he owned only 6/7 of the minerals. Subsequent to the execution of the lease Sanders, as well as a lease broker named Hudson, discovered the outstanding 1/7 mineral interest to be in A. F. Dean. Hudson contacted W. E. Stewart for the purpose of assisting Stewart in buying the outstanding 1/7 interest. He went to see Sanders for the purpose of learning the whereabouts of Dean; Sanders refused to assist him unless he himself could acquire the royalty interest. Hudson arranged for a meeting between Sanders and Stewart to see if they could agree on acquiring the 1/7 interest. It was agreed between them that if they could acquire it for $2,500 that Stewart would pay $2,000 for the leasehold estate and that Sanders would pay $500 and receive the royalty, which term they both understood to mean 1/8 of the 1/7 of the mineral interest. It was agreed that Sanders and Hudson would go to Houston and make the purchase from Dean. The deed was to be made by Dean and wife to W. E. Stewart and his son. It was agreed that Sanders was to draw a draft on Stewart in care of the First State Bank of Overton for the $2,500 consideration and that Sanders was to reimburse Stewart for the $500, and thereby acquire the royalty interest. Pursuant to their agreement, the attorneys for Stewart prepared the deed to be signed by Dean and his wife with the Stewarts named as grantees therein. Sanders and Hudson procured this deed from the attorneys at Tyler and drove to Houston to get it executed. For some reason Sanders carried a cashier's check for $2,500 with which to pay the consideration. After arriving at Houston they had the deed re-written with the name of the grantee left blank. Dean and wife signed the deed and Hudson and Sanders returned to Tyler with it, and the

next day Sanders met Stewart in Quitman where the names of the Stewarts were inserted as grantees in the deed; at the same time W. E. Stewart paid Sanders $2,000 in fulfillment of their original agreement. Thereafter, Stewart gave a letter to Frank Bezoni, an attorney, acknowledging that he held Sanders' royalty interest in trust for him. The change in procedure by Sanders in using his own money instead of drawing a draft on Stewart and in having the deed executed in blank was unknown to Stewart. These changes were not made by Sanders with the intention of breaching his agreement with Stewart; it was purely a matter of procedure on his part in order to facilitate making the transaction. Also, Sanders felt that it would be safer for him, due to the fact that he was using his own money, to leave the deed in blank until the consideration was paid by Stewart, rather than to draw a draft on him. It is significant that A. F. Dean testified that when he and his wife signed the deed Sanders told him he was holding it in blank because he was buying for another party. Under these facts MacDonald, and others, assert that title to the ½ mineral interest vested in Sanders immediately upon the delivery of the deed to him by the Deans, and that under the doctrine of after acquired title MacDonald, and others, became the owners of the leasehold interest in the ½ of the minerals by reason of the prior lease to them by Sanders and wife. On the other hand, the Stewarts contend that no title passed into Sanders under the Dean deed, but that Sanders held the blank mineral deed in trust for the Stewarts and that he thereafter executed his trust by filling in the names of the Stewarts as grantees; that the doctrine of after acquired title is not applicable under these facts, and that MacDonald, and others, cannot assert their prior lease against a title afterward acquired by Sanders as trustee for the Stewarts. The case was tried by the court without a jury and judgment entered in favor of the Stewarts for title to ⅞ of the ½ of the minerals under the lots in controversy, and MacDonald, and others, were awarded title to the ⅟₅₆ of the minerals therein as against Ray Sanders, which is ⅛ of ½ of the minerals produced from the lots in con-

troversy as a free royalty interest. From that part of the judgment vesting title in the Stewarts, MacDonald, and others, have perfected an appeal, and Ray Sanders has perfected an appeal from that part of the judgment that affects him.

■ From an early date in Texas parol trusts in land have been recognized. The case of James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743, established the principle of law that an agreement between two or more persons for the joint acquisition of land is not a contract of sale of the land, and therefore is not required under our statute of frauds to be in writing. This holding was a departure from the rule in force under the English Statutes of Fraud, which did not recognize parol trusts in land created by express agreement. The case cited has been followed so consistently that authorities need not be cited, but we are listing a few. Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Gardner v. Randell, 70 Tex. 453, 7 S.W. 781; Low v. Gray, 61 Tex.Civ. App. 487, 130 S.W. 270. In the instant case, in the absence of fact fact findings by the trial judge, the evidence will be viewed in the light most favorable to the appellees. The evidence shows conclusively that Sanders and Stewart agreed that the ½ mineral interest was to be bought from A. F. Dean and wife for the Stewarts, and that then it would be divided between them on the basis that the Stewarts would get the leasehold interest therein and Sanders would receive the "royalty." This was actually done, the only departure from the agreement being that Sanders used his own money in paying the consideration for the mineral interest, instead of drawing a draft on the Stewarts therefor, and in leaving the names of the Stewarts out of the deed as grantees, both of which things were done without the knowledge of the Stewarts. In consummation of the prior agreement made between Sanders and Stewart, Sanders, as soon as he contacted W. E. Stewart, filled in the blank deed with the Stewarts as grantees, delivered the deed, and was reimbursed by Stewart for the money that Sanders had used. It is not to be doubted that if the title to the ½ mineral interest had vested absolutely in Sanders when he received the deed from Dean, then

the contention of appellants that at that selfsame moment such title passed to Sanders' prior lessees. H. D. MacDonald and F. M. Morrison, under the doctrine of after acquired title, would be absolutely sound. However, under the facts of this case no title passed to Sanders; at most, he held the blank deed in trust for the Stewarts. Even if it should be granted, for the sake of argument, that he acquired title when the deed was delivered to him by Dean, the legal result would be the same. In that event, a constructive trust would have resulted in favor of the Stewarts and Sanders merely would have held the title for their benefit. It is equally true that under the facts of this record the Stewarts held the royalty interest in trust for the benefit of Sanders, which Stewart acknowledged. Had he repudiated this trust, certainly Sanders could have enforced the trust in his favor by reason of the undisputed agreement between him and Stewart prior to the purchase of the mineral interest from Dean. Bogert: Trusts and Trustees, Vol. 3, Part 1, § 488.

Under the agreement between Stewart and Sanders, the interest to be acquired by each in the purchase from Dean was fixed and certain. The term "royalty" has been given a definition by the courts; that is, it has been construed as meaning ⅛ interest in the oil and gas produced. State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757; Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860.

It is also well settled in Texas that the rule that title acquired by a vendor after his conveyance of property inures to the benefit of his vendee, is not applicable where the title subsequently held or acquired, actually or constructively, by the vendor is held by him in trust for a third party. Fretelliere v. Hines, 57 Tex. 392; Newton v. Easterwood, Tex.Civ.App., 154 S.W. 646. The basis for this holding is that the one asserting a claim under the doctrine of after acquired title cannot have any higher or greater rights than his vendor has under such subsequent title. In view of our holding that Sanders held the deed in blank from Dean, or even the title to the land described therein, to put it stronger, in trust for the Stewarts, as a consequence no rights attached to such land in favor of MacDonald, and others, by reason of the prior lease to them by Sanders. Sanders had no beneficial interest in the leasehold estate of the four lots in question by reason of the A. F. Dean deed, and therefore no interest therein was acquired by MacDonald, and others, under their theory of after acquired title.

We are of the opinion that the trial court erred in holding that by reason of the failure of Sanders' warranty to the extent of ⅐ of the leasehold estate conveyed by him to H. D. MacDonald, and others, an after acquired title to a ⅐ royalty interest passed to MacDonald, and others, under such previously executed lease. Sanders' lease to MacDonald, and others, covered the four lots in question but he owned title to only ⁶⁄₇ part of such lease. In the lease was the customary reservation of the ⅛ royalty interest; while the interests dealt with under the leasehold estate and under the royalty interest relate to oil, the two terms are not synonymous. The rights and obligations of the parties to a lease are different to those that accrue by reason of the ownership of a royalty interest. Conceivably, the value of one of such estates, or interests, might be entirely different to the value of the other estate or interest. The estoppel sought to be made effective against Sanders must be restricted to the kind of estate which he undertook to convey under the lease to MacDonald, and no other. The position of MacDonald, and others, would be tenable if the situation as to Stewart and Sanders were reversed; that is, if the Stewarts had acquired the royalty interest and had held in trust the leasehold estate for the benefit of Sanders, then such latter acquired estate would enure to the benefit of MacDonald, and others, under their theory of after acquired title. The royalty interest, under the facts of this case, is not such an estate as was warranted under his lease to MacDonald, and others. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158; 31 C.J.S., Estoppel, § 30; Thompson on Real Property, Vol. 7, p. 312; Wilson v. Wilson, Tex.Civ.App., 118 S.W. 2d 403. What we have said in this paragraph is without prejudice to any rights

that MacDonald, and others, might have against Sanders upon his warranty contained in the lease executed by him to MacDonald, and others.

In view of our conclusions arrived at herein and stated above, it becomes unnecessary to discuss the claim of the Stewarts that they are innocent purchasers, in the event it be conceded that title passed from Dean to Sanders when the deed was delivered to Sanders in blank. We will observe, however, that there is much cogency in their position in this respect, since in all probability the lease from Sanders and wife to MacDonald and Morrison, prior to and before the delivery of the deed to the interest from Dean and wife, to Sanders in blank, was not in the chain of title of the Stewarts.

The judgment of the trial court in favor of W. E. Stewart and A. E. Stewart for the undivided ⅓ of the leasehold interest in the four lots, subject to the trust in favor of Ray Sanders, is affirmed. That portion of the judgment awarding H. D. MacDonald, and others, a recovery against Ray Sanders of the 1/56 royalty interest is reversed and rendered in favor of Ray Sanders.

Affirmed in part; reversed and rendered in part.