A. H. (ARCH) BENGE, ET AL V. CLARENCE
SCHARBAUER, JR., ET AL.

No. A-3939. Decided June 17, 1953.
Rehearing overruled July 15, 1953.
(259 S. W. 2d Series 166)

448

*Naman, Howell & Boswell,* of Waco, *Wilson, Wilson & Logan,* of San Angelo and *Douglas Forde* of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that the grantee in the subject deed was not vested by such deed with the title to five-eighths (5/8) of the royalties arising therefrom under the lease here involved. American Republics Corporation v. Houston Oil Company of Texas, 173 Fed. 2d 728; Fleming v. Miller, 228 S. W. 2d 355; Greene v. White, 137 Texas 361, 153 S.W. 2d 575.

*Turpin, Kerr & Smith* and *Raymond A. Lynch,* all of Midland, for respondent.

In reply to petitioners' proposition respondents cited Mac-Donald v. Sanders, 207 S. W. 2d 155, writ of error refused; Talley v. Howsley, 142 Texas 81, 176 S.W. 2d 158; Adams v. Duncan, 147 Texas 332, 215 S.W. 2d 599.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This cause involves the construction of a paragraph in a deed from Clarence Scharbauer, Sr., et ux (predecessors in title) as grantors to A. H. Benge, who with the heirs of his deceased wife, are the petitioners. The deed is dated December 17, 1941, and was delivered shortly thereafter and immediately recorded in Midland County, Texas, where the land was located.

At the time of the trade, and the negotiations between the parties leading up to the execution and delivery of the deed, it was understood by all parties that there was an outstanding 1/4th full mineral interest in all the lands, and the trade was made subject to such 1/4th mineral interest as outstanding, and no contention has ever been made regarding such 1/4th interest.

On April 18, 1942 A. H. Benge and wife executed to Holt Jowell an oil, gas and mineral lease on the six sections of land conveyed to them by the Scharbauers on December 17, 1941. This lease covered the title to all of the oil, gas and other minerals in, on and under the six sections, but contained the usual paragraph reducing the bonuses, rentals and royalties, etc., in proportion to lessors' ownership of the whole of the title. The bonus under this lease was paid 3/8ths to Benge, 3/8ths to the Scharbauers, and 1/4th to the owners of the outstanding mineral interest. All parties took their money. Jowell duly assigned the lease to Magnolia Petroleum Company, who paid the annual delay rentals to the parties and in the proportions set out above, and without any complaint on the part of any party, for the years 1943 to 1950, both inclusive. On December 27, 1950, as a result of a claim on the part of Benge, Magnolia Petroleum Company paid to Benge the difference between the 3/8ths interest for which he had been theretofore paid, and the 5/8ths interest he then claimed to own under the deed from the Scharbauers. Shortly thereafter the Magnolia Petroleum Company filed this suit in the nature of an interpleader and called on the court to determine the ownership of 1/4th mineral interest claimed by both Benge and Scharbauer and to determine who was entitled to receive the bonuses, delay rentals, royalties, etc. due under the lease. Benge, et al answered claiming title to 5/8ths mineral interest and 5/8ths of all bonuses, delay rentals and royalties under the lease. The Scharbauers answered claiming they were entitled to receive 3/8ths of all these benefits under the lease. Trial was before a jury, but at the conclusion of the testimony, the trial court instructed a verdict in favor of the Scharbauers for their claimed 3/8ths mineral interest and overruled the motion for instructed verdict filed by Benge. On appeal this judgment of the trial court was affirmed by the Court of Civil Appeals. 254 S.W. 2d 236.

■ We have decided that the deed in question is not ambiguous, and must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument. There are certain well settled rules governing us in our construction of this instrument.

■ All parts of the instrument must be given effect if possible to do so without violating any legal principles. Even though different parts of the deed may appear to be contradictory and inconsistent with each other—if possible, the court must construe the language of the deed so as to give effect to all provisions thereof and will harmonize all provisions therein, and not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof. Associated Oil Co. et al v. Hart et al. Com. App., 277 S.W. 1043 (3); Watkins et ux v. Slaughter et al, 144 Texas 179, 189 S.W. 2d 699 (3); Fleming v. Ashcroft et al, 142 Texas 41, 175 S.W. 2d 401, 406; Hester v. Weaver et al, Tex. Civ. App., 252 S.W. 2d 214 (1), writ refused; 14 T. J. 919, et seq., Sec. 140.

■ It is well settled that the owners of land may reserve to themselves minerals or mineral rights, including the oil or any right or ownership therein. Humphreys-Mexia Co. et al v. Gammon et al, 113 Texas 247, 254 S.W. 296; 29 A.L.R. 607; Hoffman et al v. Magnolia Petroleum Co. et al, Com. App., 273 S.W. 828 (4); Watkins v. Slaughter, supra; Curry v. Texas Company, Civ. App., 18 S.W. 2d 256, writ dismissed; 31-A T. J. 64, Sec. 32, and authorities therein cited.

A grantor may reserve unto himself mineral rights, and he may also reserve royalties, bonuses and rentals—either one, more or all. Schlitter v. Smith, 128 Texas 628, 101 S.W. 2d 543; King v. First Nat. Bank of Wichita Falls, 144 Texas 583, 192 S.W. 2d 260, 163 A.L.R. 1128; State Nat. Bank of Corpus Christi v. Morgan et al, 135 Texas 509, 143 S.W. 2d 757; Collier et al v. Caraway et al, Texas Civ. App., 140 S.W. 2d 910, writ refused; Curry v. Texas Company, supra; Kokernot et ux v. Caldwell et al, Texas Civ. App., 231 S.W. 2d 528, writ refused.

An instrument may convey two separate estates in the minerals, one of which may be a full mineral interest and the other a royalty, or other interest in the minerals. Richardson v. Hart, 143 Texas 392, 185 S.W. 2d 563, 565; Countiss et al v. Baldwin et al, Texas Civ. App., 151 S.W. 2d 235, writ dismissed, correct judgment; MacDonald et al v. Sanders et ux, Texas Civ. App., 207 S.W. 2d 155, refused, N. R. E.; Acklin et al v. Fuqua, Texas Civ. App., 193 S.W. 2d 297, N. R. E.

It is also well settled that where the conveyance represents that the grantor is the owner of a particular interest in property

and such interest is conveyed by the deed, the grantor is estopped by his covenant of general warranty to claim that the deed conveyed a less estate than grantor's ownership. Duhig et al v. Peavy-Moore Lumber Co., Inc., 135 Texas 503, 144 S.W. 2d 878.

■ The covenant of general warranty extends only to what is granted, or what purports to be granted by the deed. Clark et al v. Gauntt, 138 Texas 558, 161 S.W. 2d 270; Adams et al v. Duncan et al, 147 Texas 332, 215 S.W. 2d 599, 603; Nye et al v. Bradford, 144 Texas 618, 193 S.W. 2d 165 (3), 169 A. L. R. 1.

Keeping in mind the above rules of law, let us examine the deed governing the rights of the parties therein. The deed, except for the reservation of an interest in the minerals and the provision as to the grantee's power to execute leases and for payment of bonuses, rentals and royalties under such leases, is an ordinary general warranty deed. It purports to convey to the grantee the several sections of land with reservation to the grantors of an undivided 3/8ths interest in the oil, gas and other minerals, and gives to the grantee and his assigns sole power to execute all future oil, gas and other mineral leases without joinder of the grantors, "but said leases shall provide for the payment of three-eighths (3/8ths) of all the bonuses, rentals and royalties to the grantors". The warranty is a general warranty of title to "the said premises". At the time when the deed was executed and delivered the grantors did not own the entire mineral interest in the land, there being outstanding in third parties a 1/4th mineral interest which was not mentioned in the deed. Disregarding for the present the clause above quoted about bonuses, rentals and royalties to be paid the grantors on all future leases, the deed purported to convey to the grantee the surface and 5/8ths of the minerals in the land and to reserve to the grantors a 3/8ths mineral interest, and it warranted the title to what it purported to convey.

Under the decision in Duhig v. Peavy-Moore Lumber Co., 135 Texas 503, 144 S.W. 2d 878, the effect of the deed, by reason of the outstanding 1/4th interest in the minerals and the general warranty, was that the grantee acquired by the deed the surface and a 5/8ths mineral interest, and the grantors reserved only a 1/8th mineral interest. On account of the outstanding 1/4th mineral interest in third parties the warranty was breached at the very time the deed was executed and delivered, and a 1/4th mineral interest required to remedy the breach was taken from what the grantors undertook to reserve to themselves leaving them only a 1/8th mineral interest.

■ The difficult question in the case arises because of the provision above quoted that the mineral leases to be executed by the grantee shall provide for payment of 3/8ths of all bonuses, rentals and royalties to the grantors. But for that provision the grantors, as owners of but 1/8th interest in the minerals as the effect of the deed, would be entitled to only a like interest, 1/8th, of bonuses, rentals and royalties under leases executed by the grantee. One-eighth of the bonuses, rentals and royalties normally would go to the grantors as owners of a 1/8th interest in the minerals and 5/8ths of bonuses, rentals and royalties would normally go to the grantee as the owner of a 5/8ths interest in the minerals. But are not the owners of such interests in the minerals free to agree, if they desire to do so, that their fractional interests in bonuses, rentals and royalties under leases to be executed shall be in different amounts from what they normally would be?

The fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest, but we cannot say that it must always be the same. The parties owning the mineral interests may make it different if they intend to do so, and plainly and in a formal way express that intention. Here that intention is expressed by clear language in the deed that leases executed by the grantee under the power given shall provide for the payment of 3/8ths of all bonuses, rentals and royalties to the grantors. The provision is not an agreement that the parties to the deed shall participate in the bonuses, rentals and royalties in proportion to their ownership of mineral interests. It is rather a contractual provision that the grantors shall receive a specified part of the bonuses, rentals and royalties; namely, 3/8ths.

■ The warranty and its breach on account of the 1/4th mineral interest outstanding in third parties reduced the 3/8ths mineral interest which the grantors undertook to reserve from 3/8ths to 1/8th and in so doing it left to the grantee the surface and the 5/8ths mineral interest that the deed purported to convey to him. There is seeming inconsistency between the parts of the deed that give the grantors a 1/8th and the grantee a 5/8ths mineral interest and the provision that the grantors' share in bonuses, rentals and royalties shall be 3/8ths, but there is no fatal repugnancy.

The warranty extends to what the deed purports to grant;

namely, the surface and the 5/8ths interest in the minerals, and the application of the rule in the Duhig case assures the grantee of title to what the deed purports to grant to him. But the warranty does not extend to the provision in the deed as to the interest in bonuses, rentals and royalties. The deed does not purport to convey the right given by that provision.

The position taken by petitioners cannot be sustained unless it is held that the amount of bonuses, rentals and royalties to be received by the grantors under leases to be executed must be reduced from the 3/8ths specified in the deed to 1/8th because the grantors' mineral interest is by reason of the doctrine of the Duhig case reduced to 1/8th. That would be to hold that the fractional part of bonuses, rentals and royalties to be received must always be the same as the fractional mineral interest owned, and that the parties are powerless otherwise to provide.

■ The stipulation that all leases shall provide for payment of 3/8ths of all bonuses, rentals and royalties to the grantors is part of and a limitation upon the power given to the grantee to execute leases. The rule of the Duhig case, in order to remedy the breach of warranty, takes from the grantors part of what the deed purported to reserve to them, but that rule should not be extended to change the express agreement as to what interests the grantors shall receive in bonuses, rentals and royalties under leases to be executed by the grantee.

Such stipulation being a valid provision and having been in the deed at the time of its delivery and acceptance is binding on all parties. Benge accepted the deed and recorded it promptly and is holding title to his lands under the deed and by virtue of its provisions. He received his mineral interests in this land under and by virtue of this deed. He made an oil and gas lease on all the lands, without the joinder of the Scharbauers under and by virtue of the second clause of this paragraph of the deed, and he now cannot be heard to say that he is not bound by the third clause of this paragraph which gives to the Scharbauers 3/8ths of all bonuses, delay rentals and royalties under such lease, or future leases. Talley et al v. Howsley et al, 142 Texas 81, 176 S.W. 2d 158; Adams et al v. Duncan et al, supra; Nye et al v. Bradford, supra.

Petitioners argue that by the first clause of this paragraph they receive 5/8ths of all the minerals and therefore the third

clause is void as repugnant to the grant. Under deeds which in one clause convey all of the mineral interests, effect has been given to a reservation on the part of the grantor of the right to drill an oil well. Collier et al v. Caraway et al, supra. In another case the deed conveyed all of the mineral interest grantor owned in the land, and it was held that there was nothing inconsistent with this provision, and a provision reserving to the grantor an undivided 1/16th royalty interest. Countiss et al v. Baldwin et al, supra. In Odstrcil et al v. McGlaun et ux, Texas Civ. App., 230 S.W. 2d 353, no writ history, Odstrcil deeded a tract of land to one Birdwell and reserved an undivided one-half of the mineral rights. Also in the deed Birdwell was given the right to execute leases without the joinder of Odstrcil, but this power to lease was limited as to the royalty to be reserved in the lease and the payment of delay rentals to Odstrcil. The Court of Civil Appeals at Eastland held the power to lease must be exercised in accordance with the limiting provision, and a lease of Odstrcil's reserved mineral interest without complying was of no effect.

Under the construction of the paragraph involved herein as sought by the petitioners the last clause would be disregarded and held for naught, while under our construction of this paragraph, all clauses are given effect. Under petitioners' contentions, the third clause has no meaning and its insertion was a useless act on the part of the grantors. The parties meant something by the third clause and our construction harmonizes it with the other parts of the paragraph and gives a meaning to the whole paragraph.

The trial court erred in its judgment that the petitioners, A. H. Benge, et al, owned only an undivided 3/8ths interest in and to all of the oil, gas and other minerals in and under the six sections of land described in the court's judgment. The trial court's judgment is modified, and A. H. Benge, et al are here adjudged to be the owners of an undivided 5/8ths mineral interest in said land; and the Scharbauers, et al are adjudged to own an undivided 1/8th mineral interest in that land but that the Scharbauers are entitled to receive 3/8ths of all bonuses, delay rentals and royalties payable under the existing and all future leases on said land. Except as above set out the judgment of the trial court and Court of Civil Appeals is in all things affirmed.

Opinion delivered June 17, 1953.

MR. JUSTICE GARWOOD, joined by JUSTICE CULVER, dissenting.

The argument for the respondent-grantors, Scharbauer, while obviously not unimpressive, is in my view, more legalistic than —to use a current term—realistic or equitable and is thus a departure from the fair and sensible principle lately exemplified in Duhig v. Peavy-Moore Lumber Co., 135 Texas 503, 144 S.W. 2d. 878. Since that decision can be called novel only in the sense of being recent, I find myself unable to think of its relation to the instant case in terms of an "extension"—as if the Duhig case were itself somewhat revolutionary. On the contrary, the proper approach to the instant case would seem to be, "What good reason do the respondent-grantors show to escape an otherwise ordinary equitable construction of their written instrument in a situation closely resembling that in the Duhig case"?

It is apparently admitted that by the terms of the deed here in question the grantors represented themselves to own the full 8/8 of the minerals, of which they were keeping 3/8 and conveying to the grantee the balance, or 5/8. We therefore correctly say that when the grantors turn out to have only 6/8 instead of the represented 8/8, their reservation of 3/8 should be cut down by 2/8 in order that the grantee shall still get his full 5/8. We thus say that because of their wrong representation in the deed, the grantors have actually reserved to themselves in the way of a so-called mineral interest only 1/8 and not the 3/8 specified in the deed. But we also say that, despite this wrong representation and its effects as regards the mineral interest purportedly reserved, the grantors yet come out (at the grantee's expense) with the practical equivalent of their erstwhile 3/8 mineral interest, to wit, a 3/8 portion of all royalties, because the grantee agreed to stipulate in any lease he might make that the grantors should receive 3/8 of all royalties, rentals and bonuses to accrue thereunder. In other words, we say in effect that the grantors stipulated two reservations—one the mere mineral interest reservation of 3/8 and the other a royalty interest, being 3/8 of all royalties; that while the 3/8 mineral reservation fails to the extent of the 2/8 interest which was outstanding in a third party, the royalty interest somehow does not fail to any extent, and so, despite the representation abovementioned (that they owned 8/8) they come out in practical effect with a 3/8 interest after all, while the grantee thus comes out with his erstwhile 5/8 interest reduced to 3/8 because he has to yield 3/8 of all royalties to the grantors, while 2/8 thereof goes to the outstanding owner. The grantee really owns, we say, 5/8 of all the minerals, and has the exclusive power

to lease 6/8 (all the minerals less the 2/8 outstanding) but in every lease he makes he must provide for the grantors to get 3/8 of the royalty, so that, with 2/8 of the royalty going to the outstanding owner, his mineral ownership of 5/8 is somewhat illusory and will not be an easy problem for the tax assessor. Had we written at more length on this theory, we would necessarily have added that if the outstanding interest had been 5/8 instead of merely 2/8, the grantee would have to yield up 3/8 of the royalties to his grantors and the remaining 5/8 to the outstanding owner, and would thus enjoy only the dubious privilege of being a royaltyless lessor and an "owner" of 3/8 of the mineral estate with no practical benefits ever likely to accrue from his ownership. Such an arrangement may be one within the power of a grantee to contract for, but few sane people would so contract.

Now, it seems to me that since the grantors have in their deed represented themselves to own 8/8, they have done so for all purposes, and not just for the purpose of one paragraph or clause of the instrument. The instrument is a unit and should be taken as if the grantors had said, "We represent ourselves to own 8/8 of the minerals in this tract of land, and your commitments as well as our rights in this trade are upon the faith of the representation." Whether the words about the contents of the leases are words of royalty or not, they are part and parcel of an entire arrangement, and this fact appears from the deed itself. It appears quite artificial to reason that the representation exists and has positive effect with regard to part of the deed but does not exist or have effect as to another part. Surely, in the case above put of an outstanding 5/8, it would be far fetched to believe that business men might agree for the grantee to have the exclusive power to lease and a substantial interest in the minerals and yet receive nothing by the deed of practical value. And yet we could not hold one way when the outstanding interest is 5/8 and another way when it is only 2/8. It is plain to me that in the instant case the same equity ("estoppel") which arises from the grantor's representation of 8/8 ownership and converts the stipulated 3/8 mineral reservation into 1/8, also justifies construing the instrument so as to reduce the so-called royalty reservation from 3/8 of the royalty to 1/8 thereof.

So to hold does not, I think, destroy the principle "that the fractional part of bonuses, rentals and royalties to be received" (by the grantors) need not "always be the same as the frac-

tional mineral interest owned" (by the grantors). Usually, as is conceded, the two fractions are the same in actual practice, so that no great harm would be done, even if our holding had the consequence apprehended. But not every case will involve an outstanding title, as this one does. Where, for example, a grantor owning 8/8, executes a deed which by unmistakable language conveys 7/8 of the minerals, reserves the remaining 1/8 thereof and also reserves an interest of, let us say, 2/8 of whatever royalty may thereafter accrue under leases, I do not understand that a judgment for the petitioner in the instant case would compel a holding that only 1/8 of the royalty was in fact reserved. The grantor did not misrepresent his ownership, so no equitable considerations are involved. Moreover, in a given case, the deed might be such as to show from its four corners beyond any doubt that even if the grantor's ownership were less than represented in the deed, he was yet to have his stipulated interest in the royalty unimpaired—an unlikely case, to be sure, but theoretically possible, just as it is theoretically possible for a grantor to contract (in the above example of a 5/8 outstanding interest) that he shall have a substantial mineral ownership and the exclusive right to lease, but without any tangible benefits to accrue to him from either.

And is it not within the pale of legal principle to hold in the instant case, that by reason of the representation of the grantors that they owned 8/8, the provision as to stipulations to be made in the leases ought to be construed as merely referring back to whatever mineral interest was actually reserved? The law gives the grantor the same fraction of the royalty that he reserved from the minerals, and lawyers often enough spell out legal consequences in contracts for purposes of easier comprehension on the part of their clients. My view of the matter could be but an unfortunate example of what one learned jurist calls "The Judgment Intuitive", but I cannot escape thinking that most any sensible business man after reading the deed involved here, would be mystified to learn that a loss due to an outstanding interest would, by its terms, fall (for all practical purposes) on the grantee rather than the grantor. If we are to treat the matter on the basis of rigid adherence to the letter of a phrase, why do we not go a step further than we do and hold that the grantors here have, not 3/8, but 4/8 of the royalty? If the lease-stipulation provision is so wholly divorced from the rest of the deed, why not say that it refers only to that royalty which the grantee is required to stipulate in the lease, and does not supplant such royalty as the grantors are entitled to

by virtue of their "mineral ownership", which is admittedly 1/8? The language in question is restricted to requiring the grantee to stipulate in his leases that 3/8 of the royalty shall be paid to the grantors. If, as we say, the requirement has no connection with the "mineral interest" reserved by the grantors, why are not the grantors additionally entitled to a corresponding 1/8 of the royalty, just as the owner of the outstanding mineral interest is as to his 2/8 of the royalty? The lessees, of course, will be indifferent, since they have to pay the full royalty in any event.

I think we should adjudge to the petitioner 5/8 of the royalties.

Justice Culver joins in this dissent.

Opinion delivered June 17, 1953.

Rehearing overruled July 15, 1953.