In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00088-CV


______________________________




CORINE, INCORPORATED AND 


DREWLAND ENTERPRISES, INC., Appellants



V.



CHRIS HARRIS, JACK E. HARRIS, JR., AND CHRIS HARRIS AND 


JACK E. HARRIS, JR., AS CO-TRUSTEES UNDER THE 


2004 GRADY HARRIS CHILDREN'S TRUST, Appellees




 


On Appeal from the 413th Judicial District Court


 Johnson County, Texas


Trial Court No. C200700217




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 In 1970, Jack and Jo Anne Harris purchased an approximately 528.14-acre tract of land in
Johnson County, (1) Texas, from Marie Stevens, Mary Lou Stevens McDonald, and Judy Nell Stevens
Ellis. In the conveyance to the Harrises, the three grantors retained, altogether, a 1/16 royalty interest
that would last for twenty years and thereafter until there was no mineral production. (2) In 1983, the
Harrises conveyed that land to Charles L. Stephens, retaining the following:

 all of those royalty rights reserved by Marie Stevens, her heirs, executors and
administrators, in [the 1970 deed], so that if the reversion described therein occurs,
then the Grantors, their heirs, executors and administrators, will then be vested with
said royalty rights described in said deed.

The meaning of that reservation lies at the heart of this appeal. Appellants, Corine, Incorporated,
and Drewland Enterprises, Inc. (collectively Corine), claim under Charles L. Stephens. Appellees,
Chris Harris and Jack E. Harris, Jr., Individually and as Co-Trustees under the 2004 Grady Harris
Children's Trust (collectively Harris Interests), claim under the Harrises.

 The ultimate question before us is to what extent, if any, the Harris Interests, by virtue of the
1983 reservation, own a royalty interest in the property. The trial court granted summary judgment
in favor of the Harris Interests, ruling that they own a 1/16 royalty interest in the property. Our
analysis leads us to conclude that (1) the Harrises' royalty reservation adopted the size of Marie's
royalty interest but not its duration, and (2) the Harris royalty should be measured by only Marie's
retained royalty interest. We reform the trial court's judgment to reflect that the Harris Interests own
a 1/32 royalty, rather than a 1/16. We affirm the judgment as modified.

 We review de novo a decision to grant or deny a summary judgment motion. See Provident
Life & Accident Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). The standards for reviewing a
traditional motion for summary judgment are well established. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985). The movant has the burden of showing that no genuine issue of
material fact exists and that the movant is entitled to summary judgment as a matter of law. Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Ash v. Hack Branch Distrib. Co., 54
S.W.3d 401, 413 (Tex. App.--Waco 2001, pet. denied). The reviewing court must accept as true
all evidence favorable to the nonmovant. Nixon, 690 S.W.2d at 549; Ash, 54 S.W.3d at 413. Every
reasonable inference must be indulged, and all doubts resolved, in favor of the nonmovant. Grinnell,
951 S.W.2d at 425; Ash, 54 S.W.3d at 413.

 If the Harris Interests, based on the evidence in the deeds, could establish that there was no
genuine issue of material fact as to any interest they owned in the land, the Harris Interests would
have been entitled to summary judgment.

 One issue before the trial court, relevant to this appeal, is whether the language in the two
deeds, quoted above, is ambiguous. All parties agree that there is no ambiguity, though they differ
markedly on the interpretation of the deeds. If the language is ambiguous, there is a fact question
for the jury to resolve, making summary judgment improper. J. Hiram Moore, Ltd. v. Greer, 172
S.W.3d 609, 614 (Tex. 2005). If we find the language to be unambiguous, we may construe the
deeds as a matter of law. See Westwind Exploration, Inc. v. Homestate Sav. Ass'n, 696 S.W.2d 378,
381 (Tex. 1985). The question of ambiguity in a deed is a question of law. Cherokee Water Co. v.
Freeman, 33 S.W.3d 349, 353 (Tex. App.--Texarkana 2000, no pet.) (citing Reilly v. Rangers
Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987)). An instrument is not ambiguous if it can be given
a definite or certain meaning as a matter of law. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). 
 If, however, a deed is subject to two or more reasonable interpretations, it is ambiguous. See
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). An
ambiguity creates a fact issue as to the parties' intent. Id. An ambiguity does not arise simply
because the parties advance conflicting interpretations. Lopez v. Munoz, Hockema & Reed, L.L.P.,
22 S.W.3d 857, 861 (Tex. 2000) (citing New Ulm Gas, Ltd., 940 S.W.2d at 589. For an ambiguity
to exist, both interpretations must be reasonable. Id.

 To interpret the Harrises' reservation, we look to that language contained in the 1983 deed
wherein the Harrises retained the following:

 all of those royalty rights reserved by Marie Stevens, her heirs, executors and
administrators, in [the 1970 deed], so that if the reversion described therein occurs,
then the Grantors, their heirs, executors and administrators, will then be vested with
said royalty rights described in said deed.

The reservation in the 1970 deed was defined by size (1/2 of 1/8 royalty) and duration (for twenty
years and so long thereafter as mineral production continues). Was the 1983 reservation also so
limited? If one were to look only to the language contained in the first one and one-half lines of the
above quoted text, and ignore the fact that the language was part of a reservation by the Harrises,
grantees in the 1970 deed, one would conclude that it described only Marie's royalty interest, defined
by both its size and duration. But we are not to ignore the remaining language or the context in
which it was used. We are to seek the intent of the parties as expressed in the instrument.

 When interpreting deed language, we will, if possible, construe the deed language to give
effect to all provisions therein, rather than striking down any part of the deed, unless an
irreconcilable conflict exists within the instrument. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d
166 (1953); Du Bois v. Jacobs, 533 S.W.2d 149, 151 (Tex. App.--Austin 1976, no writ). Even
when different parts of a deed appear inconsistent, we should harmonize those apparent
inconsistencies, if possible. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1954); Du Bois, 533
S.W.2d at 151.

(1) The Harrises' Royalty Reservation Adopted the Size of Marie's Royalty Interest but Not Its
Duration

 The 1970 deed purports to reserve a 1/16 royalty--"one-half of the usual one-eighth royalty
on all oil, gas, casing head gas and gasoline." (3) This reservation is good for only twenty years and
as long thereafter as there is production on the land. If no such production occurs, or if production
ceases after that twenty-year period, then the reservation terminates and the interests reserved would
revert to the Harrises, who were the grantees in the Stevens' conveyance. We do not find this
language susceptible to more than one reasonable interpretation. Indeed, both parties agree that
Marie and her two daughters reserved an interest in oil and mineral royalties in the land conveyed. 
The disagreement arises when the parties try to decide what became of that interest and, specifically,
the meaning of the 1983 deed.

 The 1983 deed specifically refers to the reservation that Marie made in 1970 and excepts it
from the 1983 conveyance. Corine contends the 1983 deed conveyed fee simple in the real property
from the Harrises to Stephens. Corine does not take into account that deed's Exhibit B, which
contains a list of easements and reservations which are excluded from the conveyance. The above
language is included in that list of reservations. After reviewing the 1983 deed, we find that it, too,
is capable of but one interpretation: that the Harrises, in their conveyance to Stephens, specifically
referenced the reservation held by Marie in the 1970 conveyance and made a reservation based on
that interest. (4)

 That reading is confirmed by the added language from the 1983 deed; after describing the
reservation, the Harrises added the following:

 so that if the reversion described therein occurs [the reversion from Marie and her
daughters to the Harrises], then the Grantors [the Harrises], their heirs, executors and
administrators, will then be vested with said royalty rights described in said deed.


 Clearly, the 1983 deed language demonstrates the intent to reserve something. The only
logical conclusion to us, the only one giving meaning to all parts of the 1983 deed, is that the
Harrises intended to reserve a royalty interest which was the size of Marie's reservation but which
would be applicable after Marie's interest would terminate. By definition, that interest retained by
the Harrises could not be burdened with the duration of Marie's royalty interest. Otherwise, the
Harrises' 1983 reservation would have been a nullity, retaining nothing. We conclude that the 1983
reservation adopted the size of the 1970 reservation by Marie without adopting its duration.

 We overrule Corine's second point of error. 

(2) The Harris Interests' Royalty Should Be Measured by Just Marie's Royalty Interest

 The parties also dispute the size of the royalty interest. The Harris Interests assert that the
interest should be the full 1/16 royalty interest retained in the 1970 deed, while Corine asserts that,
if any interest remains, the size should be limited to the 1/32 interest retained by Marie. We agree
with Corine on this point.

 The 1970 reservation of a 1/16 royalty was in favor of Marie (who was allocated half of it),
Mary Lou (who was allocated 1/4), and Judy (who was allocated 1/4), while the 1983 reservation
was defined by the 1970 reservation in favor of Marie, "her heirs, executors, and administrators." 

 The Harris Interests argue that Mary Lou's and Judy Nell's interests were included in the 1983
reservation because the reservation lists not only Marie, but also "her heirs, executors, and
administrators." We disagree. Ordinarily, language referring to an individual's "heirs and assigns,"
and the like, is understood to describe the quality of the interest in land, as including rights of
inheritance and alienability, rather than to be a literal reference to the individual's heirs. See Tex. Co.
v. Meador, 250 S.W. 148 (Tex. Comm'n App. 1923, judgm't adopted); Du Bois, 533 S.W.2d at 151;
Zahn v. Nat'l Bank of Commerce of Dallas, 328 S.W.2d 783 (Tex. Civ. App.--Dallas 1959, writ
ref'd n.r.e.). "Heirs and assigns" as used in a conveyance are "words of limitation"--for example,
indicating that the interest in land is inheritable and alienable--not "words of purchase"--indicating
the persons who are to receive the interest. See Black's Law Dictionary 1635 (8th ed. 2004)
(definitions of "words of limitation" and "words of purchase"). 

 We also note that Marie had no "heirs, executors, or administrators" until her death, and that
would have to be determined at that time, not at the time of the 1970 or 1983 deeds. Finally, we
point out that the same phrase referring to "heirs, executors, and administrators" was used in other
places in the deed, clearly used as words of limitation rather than words of purchase.

 The words used in the 1983 reservation were words of limitation and did not refer to Mary
Lou and Judy Nell for the purpose of incorporating their interests.

 We conclude that the 1983 deed reserves only a royalty interest equal to Marie's 1/32 royalty. 
Therefore, the trial court erred in ruling that the Harris Interests, by virtue of the 1983 reservation,
owned the full 1/16 interest reserved by Marie and her two daughters.

 Accordingly, we reform the trial court's judgment to reflect the Harris Interests own a 1/32
interest in the oil and gas royalty interests in the land at issue. We affirm the trial court's judgment
as reformed.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 11, 2008

Date Decided: April 2, 2008
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.
2. The pertinent language from the 1970 deed recites:


 PROVIDED, HOWEVER, that there is excepted from this conveyance and
reserved unto Marie Stevens, Mary Lou Stevens McDonald, and Judy Nell
Stevens Ellis, their heirs or assigns, for a period of twenty years from this
date, and as long thereafter as oil, gas or other minerals are being produced
from said land in paying quantities, one-half of the usual one-eighth royalty
on all oil, gas, casing head gas and gasoline, and one-half of the usual and
customary royalty on sulphur, coal, uranium, limestone and other minerals in,
on or under, or that may be produced from the above described land; it being
understood and agreed . . . 


 . . . .

 

 (d) that upon the expiration of twenty years from this date, if minerals are not
being produced in paying quantities, or when minerals cease being produced
in paying quantities, from said land, whichever occurs last, this reservation
shall terminate, and said royalty interest shall pass to and vest in the Grantees
herein [the Harrises], their heirs and assigns, without the necessity of any
conveyance by the Grantors, their heirs or assigns, or any other action on the
part of either party hereto. . . .

 
3. It also reserves "one-half of the usual and customary royalty on sulphur, coal, uranium,
limestone and other minerals," but that clause is not in issue here.
4. Corine argues that the 1983 deed contained an exception as opposed to a reservation. "It is
manifest that an exception does not pass title itself; instead it operates to prevent the excepted
interest from passing at all." Patrick v. Barrett, 734 S.W.2d 646, 647 (Tex. 1987). "On the other
hand, a reservation is made in favor of the grantor, wherein he reserves unto himself royalty interest,
mineral rights and other rights." Id. This is a distinction without difference. It could be argued that
the 1983 deed contains an exception, as contemplated by Patrick, in that Harris prevented the
excepted interest, that which Stevens had reserved, from passing. But it would also be accurate to
call it a reservation: the Harrises reserved the interest that would revert to them when the condition
in the Stevens [1970] deed occurred, to-wit, there was no production from the land after twenty
years. 

 Corine does not really explain how or why the 1983 Harris conveyance is an exception rather
than a reservation. In Patrick, Tuers sold land to Patrick in 1946, reserving a 1/16 interest in the oil
and gas. In 1950, Patrick sold the land, specifically excepting from that sale Tuers' 1/16 interest. 
The Texas Supreme Court found this retention of Tuers' 1/16 interest to be an exception, because
title in the royalty interest never went from the first seller [Tuers] to the final buyer [Barrett]. Id. at
648. Patrick's conveyance also gave the buyer, Barrett, a 1/32 interest in the land's mineral interests;
that clause also reserved to Patrick a 1/2 interest. "Patrick reserved to himself an undivided 1/2
interest in and to the mineral interest in the tract of land. Therefore, the 1950 deed specifically
reserved for Patrick a 1/32nd royalty interest and conveyed to Barrett the remaining 1/32nd royalty
interest." Id. Based on this reasoning, the Texas Supreme Court held that Patrick owned 3/32 of the
oil and gas royalty interest in the land at issue. 

 Corine does not explain how or why the different terms produce a different result for these
parties. As concluded above, the deeds are subject to a single reading: that, in 1970, Marie and her
two daughters conveyed property to the Harrises with a reservation which would revert to the
Harrises; in 1983, the Harrises conveyed the land and in essence reserved the reversionary interest
given the Harrises in the 1970 deed following Marie's royalty interest's termination.



nt-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-055-CR%20Simmons%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00055-CR

                                                ______________________________

 

 

                                    MARQUAUS SIMMONS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                         Trial Court
No. CR 00838

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

            

            Marquaus
Simmons appeals from the revocation of his community supervision on his plea of
true and the imposition of a sentence of eight years imprisonment.  The State filed a motion to revoke for
failure to pay fees, restitution, and fines, his commission of subsequent
offenses, and use of marihuana.  At the
hearing, evidence was introduced in the form of testimony from an adult community
supervision officer and copies of convictions, and Simmons pled true to each
ground alleged.  The trial court revoked
his community supervision and sentenced him to eight years confinement.  

            Simmons
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail. Counsel has thus provided a professional evaluation of
the record demonstrating why, in effect, there are no arguable grounds to be
advanced.  This meets the requirements of
Anders v. California, 386 U.S. 738
(1967); Stafford v. State, 813 S.W.2d
503 (Tex. Crim. App. 1981); and High v.
State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief and a letter to Simmons on May 16, 2011, informing
Simmons of his right to file a pro se response and of his right to review the
record.  No response has been filed.  Counsel has also filed a motion with this Court
seeking to withdraw as counsel in this appeal. 


            We
have determined that this appeal is wholly frivolous.  We have independently reviewed the clerks
record and the reporters record, and find no genuinely arguable issue.  See
Halbert v. Michigan, 545 U.S. 605, 623 (2005).  We, therefore, agree with counsels
assessment that no arguable issues support an appeal.  See
Bledsoe v. State, 178 S.W.3d 824, 82627 (Tex. Crim. App. 2005).  

            We
affirm the judgment of the trial court.[1]

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August
4, 2011

Date Decided:             August
5, 2011

 

Do Not Publish











[1]Since
we agree this case presents no reversible error, we also, in accordance with Anders, grant counsels request to
withdraw from further representation of appellant in this case.  No substitute counsel will be appointed.  Should appellant wish to seek further review
of this case by the Texas Court of Criminal Appeals, appellant must either
retain an attorney to file a petition for discretionary review or appellant
must file a pro se petition for discretionary review.  Any petition for discretionary review must be
filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court.  See
Tex. R. App. P. 68.2.  Any petition for discretionary review must be
filed with this Court, after which it will be forwarded to the Texas Court of
Criminal Appeals along with the rest of the filings in this case.  Should a petition for discretionary review be
filed after September 1, 2011, it should be filed directly with the Texas Court
of Criminal Appeals.  See Tex.
R. App. P. 68.3.  Any petition for
discretionary review should comply with the requirements of Rule 68.4 of the
Texas Rules of Appellate Procedure.  See Tex.
R. App. P. 68.4.