# IN THE SUPREME COURT OF TEXAS

═══════════

No. 16-0353

═══════════

BENEDICT G. WENSKE AND ELIZABETH WENSKE, PETITIONERS,

v.

STEVE EALY AND DEBORAH EALY, RESPONDENTS

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

═══════════════════════════════

JUSTICE BOYD, joined by JUSTICE WILLETT, JUSTICE LEHRMANN, and JUSTICE DEVINE, dissenting.

The deed in this case grants all of the interests in all of the property to the grantees, "subject to" a reservation for the grantors of a 3/8ths mineral interest and an exception of a 1/4th royalty interest that belongs to previous owners. The only thing "subject to" anything is the interest granted to the grantees. Neither the reserved mineral interest nor the excepted royalty interest is "subject to" anything. Under the deed's plain language, only the interest granted to the grantees is "subject to" the excepted interest. So the interest the grantees received, and only that interest, bears the burden of the excepted interest. Because the Court holds otherwise, I respectfully dissent.

## I.
## Background

In 1988, Benedict and Elizabeth Wenske purchased a 55-acre tract of land in Lavaca County. The 1988 deed conveyed the property to the Wenskes, with all "the rights and

appurtenances thereto," but "excepted and reserved" a 1/4th royalty interest to be retained by two of the sellers, Marian Vyvjala and Margie Novak (collectively, Vyvjala).[1] In 2003, the Wenskes sold the land to Steve and Deborah Ealy. In the 2003 deed, the Wenskes granted, sold, and conveyed to the Ealys the same 55-acre tract, with all "the rights and appurtenances thereto," but "*subject to* [1] the Reservations from Conveyance *and* [2] the Exceptions to Conveyance and Warranty" described in the deed. (Emphases added).

The deed describes one "Reservation from Conveyance": a reservation "for" the Wenskes "of an undivided 3/8ths of all oil, gas, and other minerals in and under and that may be produced from the Property."[2] The deed identifies several "Exceptions to Conveyance and Warranty," including certain rights-of-way, easements, liens, previously recorded conveyances, tax liabilities, and—importantly—Vyvjala's previously reserved royalty interest, which the deed describes as an

> [u]ndivided one-fourth (1/4) interest in all of the oil, gas and other minerals in and under the herein described property, reserved by Marian Vyvjala, et al for a term of twenty-five (25) years in [the 1988 deed] . . . together with all rights, express or implied, in and to the property herein described arising out of or connected with said interest and reservation, reference to which instrument is here made for all purposes.[3]

---

[1] The reservation and exception provided that Vyvjala would retain the 1/4th royalty interest "for a period of twenty-five (25) years from and after the date of this conveyance and as long thereafter as oil or gas or other mineral is produced from said land in paying or commercial quantities." The 25-year period expired in 2013, but the land has apparently been producing in paying quantities since then. No party contends that Vyvjala's interest has terminated.

[2] In the description of the reservation, the parties agreed that if the mineral estate was subject to a then-existing lease, the parties would share in the royalties from that lease in proportion to their ownership in the mineral interest. The property was not subject to a lease, however, at the time of the deed.

[3] As the Court and the court of appeals note, *see* — S.W.3d at —, by describing an "[u]ndivided one-fourth (1/4) interest in all of the oil, gas and other *minerals* in and under the herein described property," the deed's exception for Vyvjala's interest actually appears to identify a mineral interest rather than a royalty interest. But by referring explicitly to the 1988 deed in which Vyvjala expressly reserved a 1/4th *royalty* interest, the 2003 deed appears to except only Vyvjala's royalty interest, not a non-existing, previously reserved mineral interest. Neither the Wenskes nor the Ealys argue otherwise.

2

The parties agree that after the 2003 transaction: (1) the Ealys own all of the interest in the property's surface and a 5/8ths interest in the minerals; (2) the Wenskes own the remaining 3/8ths interest in the minerals; and (3) Vyvjala owns a 1/4th interest in the royalties:

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Ealys 100% | Ealys 5/8 | Vyvjala 1/4 |
| | Wenskes 3/8 | Ealys + Wenskes 3/4 |

The issue is, who owns how much of the remaining 3/4ths royalty interest? Or stated differently, how should the burden of Vyvjala's 1/4th royalty interest be allocated between the Ealys' and Wenskes' royalty interests?

The Wenskes contend that they own a 3/8ths royalty interest—corresponding to their 3/8ths mineral interest—because the deed makes the Ealys' interests "subject to" Vyvjala's 1/4th royalty interest. And because the deed expressly excepts Vyvjala's royalty interest from the interest granted to the Ealys, the Ealys' mineral interest includes only a 3/8ths royalty interest:

WENSKES' ARGUMENT

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Ealys 100% | Ealys 5/8 | Vyvjala 1/4 (2/8) |
| | | Ealys 3/8 |
| | Wenskes 3/8 | Wenskes 3/8 |

The Ealys contend that Vyvjala's royalty interest burdens both the Wenskes' and the Ealys' mineral interests, in proportion to their ownership of the mineral interest. The Court agrees, concluding that it "cannot construe [the deed] to say that the parties intended the Ealys' interest to be the *sole* interest subject to" Vyvjala's royalty interest because the Court sees "no expression of such intent, plain or not, in the deed here." *Ante* at __. Therefore, "the only reasonable reading of the deed" results in the Wenskes and the Ealys each bearing the burden of Vyvjala's royalty interest "in shares proportionate to their fractional interests in the minerals." *Ante* at __. Thus:

EALYS' ARGUMENT AND THE COURT'S HOLDING

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Ealys 100% | Ealys 5/8 | Vyvjala 1/4 (8/32) |
| | | Ealys 15/32 (5/8 minus 5/8 of 1/4) |
| | Wenskes 3/8 | Wenskes 9/32 (3/8 minus 3/8 of 1/4) |

.

I disagree because the deed's plain language expressly says that the interest granted to the Ealys is the only interest that is "subject to" the exception for Vyvjala' interest.

## I.
## The Deed's Plain Language

Like the Court, I agree that we must rely on the deed's plain language to determine the parties' intent. *Ante* at __. But I conclude that the deed's plain language expressly states that *only* the Ealys' interest is "subject to" *all* of Vyvjala's royalty interest. As the Court notes, "subject to" ordinarily means "subordinate to," "subservient to," or "limited by." *Ante* at __ (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd)). But the Court never considers what, under the deed's language, is "subject to" what. The Court asserts that it is giving "the deed's words their plain meaning, reading it in its entirety, and harmonizing all of its parts," *ante* at __, but the Court never addresses the controlling question: under this deed's plain language, *what exactly* is "subject to" *what*? By failing to ask the controlling question, the Court ends up with the wrong answer. On this question, the deed's language is clear and unambiguous.

### A.     What is "subject to" anything?

The deed's granting clause unambiguously identifies what the subject-to provision modifies: the Wenskes, "*subject to* the Reservations . . . and the Exceptions . . . , *grants, sells, and conveys to [the Ealys] the Property*, together with all and singular the rights and appurtenances thereto in any way belonging." Under the granting clause, that which is "subject to" something is the interest granted, sold, and conveyed to the Ealys. The deed expressly identifies the reservation as a "Reservation *from Conveyance*" and the exception as an "Exception *to Conveyance* and Warranty." The conveyance—the grant itself—is "subject to" the reservation and the exceptions.

5

The deed describes exactly what the grant itself conveyed to the Ealys: the 55-acre tract, "together with all and singular the rights and appurtenances thereto in any way belonging." I agree with the Court when it states that the deed "purported to *grant* all of the surface estate to the Ealys and, by operation of a reservation, *effectively* divided the mineral estate between the parties." *Ante* at __ (emphases added). But the deed actually "grants, sells, and conveys" *all* of the surface estate and *all* of the mineral estate to the Ealys, "subject to" the reservations and exceptions. The grant itself includes *all* of the interests in the property—meaning the entire interest in the surface and the entire interest in the minerals—and thus the entire interest in the royalties. *See Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016) (explaining that a fee simple interest in land includes both the entire surface estate and the entire mineral estate); *Woods v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954) (explaining that a mineral interest generally includes "a corresponding interest in the royalty").

Contrary to the Court's only reason for its holding, the deed does in fact express an intent that the Ealys' interest be "the *sole* interest subject to" Vyvjala's royalty interest. *Ante* at __. The deed's reference to Vyvjala's interest does not—as the Court asserts—merely "put the Ealys on notice that the entirety of the minerals are subject to" Vyvjala's royalty interest "to avoid a warranty claim." *Ante* at __. Instead, the deed expressly refers to Vyvjala's interest as an *exception* to the conveyance, meaning an exception that the interest granted to the Ealys is "subject to."

The deed describes only *one* interest that is "subject to" anything: the interest the Wenskes "granted, sold, and conveyed" to the Ealys. The Court holds that the mineral interest the Wenskes *reserved* is *also* "subject to" something—a portion of Vyvjala's interest—but the deed's plain

6

language simply does not support that holding. The deed subjects the interest granted and conveyed to the Ealys to both the reservation that created the Wenskes' interest and the exception that preserved Vyvjala's interest, but does not subject the Wenskes' reserved interest to the exception or to anything else. The description of the reservation identifies a 3/8ths mineral interest without making that interest "subject to" anything. Nor does the subject-to clause subject the reservation to anything. By describing only the interest granted to the Ealys as the interest that is "subject to" the exception for Vyvjala's interest, the deed unambiguously expresses an intent that the Ealys' interest be "the *sole* interest subject to" Vyvjala's royalty interest.

**B.      What is the Ealys' interest "subject to"?**

Although the granting clause conveys all of the interests in the property to the Ealys, the Wenskes could not actually convey all of the interests to the Ealys. Vyvjala owned a 1/4th interest in the royalties, so the Wenskes could only convey 3/4ths of that interest. That, of course, was one reason for the subject-to clause. The second reason was the Wenskes' desire to keep for themselves a 3/8ths mineral interest. This raises the second part of the controlling question: what exactly is the grant to the Ealys "subject to"?

The deed unambiguously answers this question as well. The grant itself is "subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty." The deed expressly describes (1) the reservation "for" the Wenskes of a 3/8ths mineral interest, and (2) the exception of Vyvjala's 1/4th of the royalty interest. The reservation creates the Wenskes' interest, but the granting clause subjects only the Ealys' interest to both the reservation and the exception.

7

Although the Court notes that deeds "widely use[]" the phrase "subject to" for various purposes, *ante* at __, the Court agrees that "no question exists that the interest granted to the Ealys was 'limited by' or 'subservient to'" Vyvjala's royalty interest. *Ante* at __ (citing *Kokernot*, 231 S.W.2d at 531). The Court also agrees that the deed subjects the interest conveyed to the Ealys to all of the 3/8ths mineral interest reserved for the Wenskes. And it agrees that the deed subjects the Ealys' interest to Vyvjala's royalty interest *generally*, but it does not agree that the deed subjects the Ealys' interest to *all* of Vyvjala's interest. *Ante* at __ (concluding that "the deed here cannot be reasonably construed as conveying the entire burden of [Vyvjala's] outstanding [royalty interest] to the Ealys"). This illustrates why we must determine from the deed's language what *exactly* the interest conveyed to the Ealys is subject to.

The deed unambiguously answers that question: the deed subjects the Ealys' interest to Vyvjala's "[u]ndivided one-fourth (1/4) interest in" the royalties. According to the deed's plain language, the deed does not subject the interest granted to the Ealys to 3/8ths of Vyvjala's royalty interest (as the Court concludes), or to some other portion of Vyvjala's interest. Rather, just as the deed subjects the Ealys' interest to *all* of the Wenskes' 3/8ths mineral interest, it also subjects the Ealys' interest to *all* of Vyvjala's 1/4th interest in the royalties.

Finally, the Court suggests that the "best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it," because "it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Ante* at __ (quoting *Dunham v. Kirkpatrick*, 101 Pa. 36, 43 (1882)). If by this the Court means that we should impute meaning based on our own intuition of what the parties probably meant—which of course will usually

8

correspond to our own views of what the parties *should* have meant—I disagree. But if the Court means that we should simply give the terms of an agreement their plain meaning, I agree. Here, the plain language subjects only the interest granted to the Ealys to all of Vyvjala's interest.

**C.    The Ealys' interest is subject to all of the Wenskes' and all of Vyvjala's interests.**

The answer to the controlling question is: the interest granted, sold, and conveyed to the Ealys (*i.e.*, all of the interest in the property) is "subject to" (1) the Wenskes' 3/8ths mineral interest *and* (2) Vyvjala's 1/4th interest in the royalties. The deed's plain language does not subject the Wenskes' mineral interest to anything. Contrary to the Court's only reason for its holding, the deed's plain language states that the Ealys' interest is the *sole* interest subject to anything.

**II.**
**Additional Considerations**

The Court emphasizes that it reaches its conclusion by relying solely on the deed's plain language, considering the deed in its entirety, and not on any "mechanical rule[]," "default rule," or "magic words" test for construing deeds. *Ante* at __, __, __. I agree we should construe deeds to determine the parties' intent as expressed within the four corners of the document. *See ante* at __. "That intention, when ascertained, prevails over arbitrary rules." *Harris v. Windsor*, 294 S.W.2d 798, 800 (Tex. 1956).

But when this Court adopts a rule of interpretation, parties who draft agreements will reasonably rely on that rule when deciding how to express their intent. Our decisions can imbue words with "magic," and drafters rely on that talismanic power to create certainty in their instruments. *See, e.g.*, *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984) (*changing* the default definition of "minerals"); *Clifton v. Koontz*, 325 S.W.2d 684, 690–91 (1959) (defining the

9

standard for "production" and "production in paying quantities"). We should therefore "be loathe to change long-standing rules in the oil and gas field when doing so would alter the ownership of minerals conveyed in deeds which rely on the law established by this court and followed by lower courts, commentators, and especially lawyers advising their clients." *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 895 (Tex. 1986).

The parties rely on numerous legal principles and on precedent applying those principles to support their proposed constructions of the deed, and the court of appeals did the same. Although, as explained, I conclude that the deed's plain language subjects only the Ealys' interest to all of Vyvjala's royalty interest, the parties' arguments compel us to at least consider the legal principles and precedent on which they rely. Doing so, I conclude that the principles and precedent support the deed's plain language. As a result, I worry that the Court's opinion, which purports to construe the deed's plain language without relying on the principles and precedent, will create uncertainty in this area of the law.

## A. The Nature of the Interests

I first consider whether principles that govern the inherent nature of the parties' interests alter the deed's plain language, and conclude that they do not. A fee simple interest in land includes both the surface estate and the mineral estate. *Hysaw*, 483 S.W.3d at 8.[4] "Texas law has always recognized that a landowner may sever the mineral and surface estates and convey them

---

[4] We have also recognized that a land interest includes a separate groundwater estate, but that estate is not at issue here. *See Coyote Lake Ranch, LLC v. Lubbock*, 498 S.W.3d 53, 63 (Tex. 2016) ("An interest in groundwater can be severed from the land as a separate estate, just as an interest in minerals can be.").

10

separately." *Coyote Lake Ranch, LLC v. Lubbock*, 498 S.W.3d 53, 60 (Tex. 2016). The mineral estate contains "five severable rights," including "the right to receive royalty payments." *Hysaw*, 483 S.W.3d at 9 (quoting *French v. Chevron U.S.A. Inc.,* 896 S.W.2d 795, 797 (Tex. 1995)).[5] A right to receive royalty payments is "a nonpossessory interest in minerals" that "derives from" the mineral interest but "may [also] be separately alienated." *Id.* (quoting *Luckel v. White,* 819 S.W.2d 459, 463 (Tex. 1991)). A deed may separately grant or reserve a mineral interest, a royalty interest, an interest in any of the mineral estate's other severable rights, or any combination thereof. *Benge v. Scharbauer*, 259 S.W.2d 166, 168 (Tex. 1953).

Generally, "the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty." *Wood v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954); *see also Benge,* 259 S.W.2d at 168 ("The fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest . . . ."). Thus, for example, when a deed conveys or reserves a 3/8ths interest in the minerals, the nature of that interest, by operation of law, includes the right to receive 3/8ths of the royalties. But we have refused "to hold that the fractional part of bonuses, rentals and royalties to be received must always be the same as the fractional mineral interest owned, and that the parties are powerless otherwise to provide." *Benge*, 259 S.W.2d at 169. Depending on the parties' agreement, "the royalty interest conveyed may be larger or smaller than the interest conveyed in the minerals in place." *Hysaw*, 483 S.W.3d at 9 (quoting *Luckel*, 819

---

[5] The other four mineral-estate rights are 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, and 4) the right to receive delay rentals. *Hysaw*, 483 S.W.3d at 9 (quoting *French,* 896 S.W.2d at 797).

S.W.3d at 463). The interests' inherent nature does not require "that the interest in the royalty must be the same as the mineral interest conveyed where the instrument provides otherwise." *Woods*, 273 SW.2d at 621.

We must therefore be careful to distinguish between the theoretical operation-of-law result and the result a deed's language actually requires. The Court states—and I agree—that *theoretically*, a severed fraction of the royalty interest burdens the entire mineral estate because it necessarily limits the royalty interests attached to the underlying mineral interests. For example, if one party owns the entire mineral estate and another owns a 1/4th royalty interest, the entire mineral interest is burdened because its owner can receive only 3/4ths of the royalties. And if two parties each own a 1/2 mineral interest and a third party owns a 1/4th royalty interest, both mineral interests are theoretically burdened because, together, the mineral-interest owners can receive only 3/4ths of the royalties. We have thus explained, "Ordinarily the royalty interest . . . would be carved proportionately from the two mineral ownerships." *Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957).

Relying on this theoretical concept, the court of appeals here held—and the Court seems to agree—that because a royalty interest is "carved out" of the mineral estate, Vyvjala's 1/4th royalty interest burdens "any production of minerals from the entire mineral estate, which includes [the Wenskes'] 3/8th interests in the mineral estate." — S.W.3d at —; *ante* at __. But because the deed here expressly states that the interest conveyed to the Ealys (and only that interest) is "subject to" Vyvjala's 1/4th royalty interest, that legal theory simply does not apply.

When a deed grants a portion of a mineral interest that is subject to a previously reserved fraction of the royalty interest but does not make the grant subject to the outstanding royalty interest, the granted portion of the mineral interest is not subject to the severed royalty interest even though, theoretically, the entirety of the mineral interest was subject to the royalty interest at the time of the grant. *See, e.g.*, *Selman v. Bristow*, 402 S.W.2d 520, 522 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.). While a severed fractional royalty interest may theoretically burden the entire mineral estate (because it is "carved out of" that estate), the parties to a transaction that divides the interests in that estate "may make it different if they intend to do so, and plainly and in a formal way express that intention." *Benge*, 259 S.W.2d at 169.

The deed here "plainly and in a formal way" expresses the parties' intention to "make it different." *Id.* The deed grants all of the property to the Ealys and makes *that interest* "subject to" both the reservation for the Wenskes and the exception for Vyvjala's royalty interest. The deed thus makes the Ealys' royalty interest smaller than their mineral interest by subjecting the Ealys' mineral interest to all of Vyvjala's 1/4th royalty interest. Nothing inherent in the nature of the interests alters or prohibits that agreed result. *Hysaw*, 483 S.W.3d at 9. The Court errs by allowing the theoretical nature of the interest to control its interpretation of the deed's actual plain language.

## B.     Reservations and Exceptions

The court of appeals noted that the deed "reserves" a 3/8ths mineral interest for the Wenskes but "excepts" Vyvjala's 1/4th royalty interest. — S.W.3d at —. Although the court did not explain the relevance of this distinction, it seems to have relied on the distinction to reject the Wenskes' contention that the deed's exception "conveyed the entire burden" of Vyvjala's royalty

13

interest to the Ealys. *Id.* Although I agree that reservations and exceptions are different, that distinction does not control the outcome here.

A reservation "must always be in favor of and for the benefit of the grantor." *Pich*, 302 S.W.2d at 650 (quoting *Klein v. Humble Oil & Ref. Co.*, 67 S.W.2d 911, 915 (Tex. Civ. App.—Beaumont 1934), *aff'd*, 86 S.W.2d 1077 (Tex. 1935)). An interest reserved from a grant is a "new thing, either issuing out of or incident to the thing granted." *Id.* (quoting *Allen v. Henson*, 217 S.W. 120, 123 (Ky. 1919)). Here, for example, under the proper usage, the Wenskes could "reserve" an interest for themselves but they could not "reserve" an interest for Vyvjala.

In the context of royalty reservations, courts of appeals have described what they call the "two-grant" theory. This theory envisions that when a grant is subject to a reservation, the grantor conveys all of the granted interests to the grantee and then receives back the interest reserved, such that there are actually two grants—at least at a theoretical level. *See, e.g.*, *ConocoPhillips Co. v. Koopmann*, No. 13-14-00402-CV, 2016 WL 2967689, at *9 (Tex. App.—Corpus Christi May 19, 2016, pet. granted) (mem. op.) (citing *Bagby*, 627 S.W.2d at 195–96). Although we have not expressly adopted or confirmed this theory, it finds some conceptual support in our recognition that reservations create "new" interests. *Pich*, 302 S.W.2d at 650 (quoting *Henson*, 217 S.W. at 122).[6] The two-grant theory may help to explain the difference between a deed that conveys only a partial interest and a deed that conveys an entire interest but reserves a part of that interest. The ultimate outcomes of the two deeds are the same, but the legal mechanics are different.

---

[6] The Court has granted the petition for review in *Koopmann* and may directly address the validity and contours of the two-grant theory in that case. My reference to the theory here is not to pre-judge those issues, but simply to point out that the subject-to clause does not apply to the reserved interest under either the grant/reservation language or the two-grant theory.

14

An "exception," on the other hand, can refer to any "mere exclusion from the grant." *Id.* (quoting *Klein*, 67 S.W.2d at 915). The term exception is broader than the term reservation, as it can be used either to exempt an interest from the grant and retain it with the grantor or exempt "from the operation of the deed some part of the thing granted the title of which is at the time in another." *Id.*; *see also Patrick v. Barrett*, 734 S.W.2d 646, 647 (Tex. 1987) (citing *Pich*, 302 S.W.2d at 648; *Benge*, 259 S.W.2d at 167–68).

Here, any difference between a reservation and an exception does not alter or contradict the deed's plain language, for at least two reasons. First, in spite of their differences, we have confirmed that both a reservation and an exception are "*deducted from the thing granted*, narrowing and limiting what would otherwise pass by the general words of the grant." *King v. First Nat'l Bank of Wichita Falls*, 192 S.W.2d 260, 262 (Tex. 1946). Here, by subjecting the grant to both the "Reservation *from Conveyance*" and the "Exception *from Conveyance* and Warranty," the deed's language confirms that this rule applies. (Emphasis added). The "thing granted" to the Ealys "by the general words of the grant" includes all of the mineral interests with all of the corresponding royalty interests, and *both* the reservation and the exception are deducted from that interest conveyed to the Ealys. Under the granting clause, the Ealys receive 8/8ths of the minerals (and thus 8/8ths of the royalties), but the reservation and the exception "are deducted" from the 8/8ths that the Ealys would otherwise receive.

Second, under the two-grant theory, the reservation (to which the grant was subject) separately grants the 3/8ths mineral interest back to the Wenskes. Although the interest granted to the Ealys is "subject to" the exception for Vyvjala's interest (which burdens the entire 8/8ths

15

mineral interest granted to the Ealys), the grant of the 3/8ths interest back to the Wenskes (through the reservation) is not. If, for example, the 2003 deed had excepted Vyvjala's 1/4th royalty interest but had not reserved a 3/8ths mineral interest for the Wenskes, the Ealys would have received an 8/8ths mineral interest but only a 3/4ths royalty interest. And if the Ealys had later granted the Wenskes 3/8ths mineral interest without excepting Vyvjala's royalty interest, the Ealys would bear all of Vyvjala's interest because the second deed did not express any intent to burden the interest granted to the Wenskes. In the same way, under the deed's grant/reservation language, both of those "grants" occur in the 2003 deed (a grant of 8/8ths to the Ealys and a grant of three of those eighths—through the reservation—to the Wenskes). But only the grant to the Ealys is made "subject to" Vyvjala's interest; the reservation/grant to the Wenskes is not.

## C.      Precedent

Although the parties rely heavily on our precedent, the Court appears to conclude that none of our precedent applies or is particularly helpful here. I conclude that our precedent, which uniformly follows the approach I follow here and interprets similar language similarly, supports my conclusion: the deed's plain language subjects the Ealys' interest to all of Vyvjala's royalty interest. Five of our decisions are worth describing in some detail.

### 1.      *Duhig v. Peavy-Moore Lumber*

*Duhig v. Peavy-Moore Lumber Co.* is a Commissioners Court opinion that this Court adopted. 144 S.W.2d 878, 878 (Tex. 1940). W. J. Duhig acquired a tract of land through a deed in which the grantor, Alexander Gilmer, reserved an undivided 1/2 interest in the minerals. Duhig later conveyed the property to Miller-Link Lumber in a deed that provided that "grantor retains an

16

undivided one-half interest" in the minerals. *Id.* The first issue was whether Duhig's deed to Miller-Link (1) reserved only the 1/2 mineral interest that Gilmer had previously reserved, or (2) reserved for Duhig the other half of the mineral interest that Duhig owned at the time of the deed. The Court held that the deed only exempted Gilmer's 1/2 interest and did not reserve an interest for Duhig in the other half.

In reaching this conclusion, the Court looked first to the granting clause. The Court explained that because the granting clause described the interest granted as the particular tract of land, the grant itself included all of "the minerals, as well as the surface, and thus the granting clause purports to convey both the surface estate and all of the mineral estate." *Id.* at 879. Upon this foundation, the Court's opinion described two reasons for its holding. First, because the deed reserved only 1/2 of the minerals and did not also except the other half, the deed "invest[ed] the grantee with title to the surface and a one-half interest in the minerals, excepting or withholding from the operation of the conveyance only the one-half interest theretofore reserved." *Id.* at 879–80.

Second, it was "the court's opinion, however, that . . . a well settled principle of estoppel" compelled the same result. *Id.* at 879. Specifically, the deed provided that Duhig, as grantor, "retained" a 1/2 mineral interest, and the word retained "ordinarily means to hold or keep what one already owns." *Id.* Under that ordinary meaning, the deed reserved a 1/2 mineral interest *for Duhig* and granted the remaining mineral interest to Miller-Link. But "assuming" that was a correct interpretation of the deed, Duhig breached the deed's warranty because Duhig could not both retain half of the minerals and convey the other half when he himself only owned one half. *Id.* at 880.

17

To ensure that Miller-Link received the interests warranted while Gilmer retained his 1/2 mineral interest, the Court concluded that Duhig was estopped from asserting any title to the mineral interest. *Id.*

The Court's methodological approach to construing the deed in *Duhig* is the approach I follow here, but the Court does not. The Court in *Duhig* began by focusing on what the granting clause actually conveyed. And because the granting clause identified the property itself, it conveyed *all* interests in the property even though the grantor did not own all of the interests. Beginning with that reality, the Court then considered whether and how the "retained" clause diminished what was granted. In the same way, here, we must begin by recognizing what the granting clause conveys—all of the interests in the 55 acres—and then consider whether and how the subject-to clause diminishes *what was granted*. Because the subject-to clause—which incorporates the reservation and exceptions—applies only to the interest that was granted to the Ealys, it does not diminish the Wenskes' interest at all.

### 2. *Benge v. Scharbauer*

Clarence Sharbauer conveyed a tract of land to A. H. Benge in a deed that subjected the grant to a reservation for Sharbauer of a 3/8ths mineral interest. *Benge*, 259 S.W.2d at 167. The deed thus conveyed a 5/8ths mineral interest to Benge and reserved a 3/8ths mineral interest for Scharbauer. *Id.* But a prior owner had previously reserved a 1/4th mineral interest, and the deed did not except that interest. *Id.* Because the deed could not terminate the prior owner's 1/4th mineral interest, the issue was whether that interest diminished Benge's or Sharbauer's mineral interest or both. *Id.* Relying on *Duhig*, the Court held that Sharbauer breached his warranty if the

18

deed both conveyed 5/8ths of the interest to Benge and reserved 3/8ths for Scharbauer. As the remedy for that breach, the Court held that Benge owned a 5/8ths mineral interest and Scharbauer owned only a 1/8th mineral interest. *Id.* at 168.

Ordinarily, Scharbauer should also own only a 1/8th interest in royalties, bonuses, and rentals, because those rights are part of and derive from the mineral interest. *Id.* at 168–69. But this deed contained a separate clause in which the parties agreed that Benge would have all of the right to lease the minerals but all leases had to pay Scharbauer 3/8ths of all royalties, bonuses, and rentals. *Id.* This raised the issue of whether Sharbauer retained that right even though he could only own a 1/8th mineral interest. *Id.* The Court concluded that he could. *Id.* Although the Court noted that the "fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest," the mineral-interest owners "may make it different if they intend to do so, and plainly and in a formal way express that intention." *Id.* at 169. Benge and Sharbauer did not agree that they would "participate in the bonuses, rentals and royalties in proportion to their ownership of mineral interests." *Id.* Instead, they expressly agreed that Sharbauer would "receive a specified part of the bonuses, rentals and royalties; namely, 3/8ths." *Id.*

*Benge* is helpful here for two reasons. First, as in *Duhig*, it applied the methodological approach I apply here: looking first to the interest that was granted and then looking to see what that interest is subject to. *Id.* at 167. Because the *Benge* deed (unlike the deed here) did not subject the interest granted to the previously reserved interest, the grantee received all of the interest granted, with no proportional reduction. *Id.* at 169. Here, because the deed does expressly subject

19

the interest granted to the previously reserved interest, the grantee receives the interest granted less the interest excepted. Second, *Benge* confirms that parties may by agreement distribute mineral and royalty interests in ways that differ from the way the interests' inherent nature would otherwise require. *Id.* at 167–68. Although a royalty interest derives from and thus ordinarily corresponds to the owner's mineral interest, the parties may agree to an alternative distribution. *Id.* The parties have done just that here. Even if the parties' royalty interests would otherwise be proportionate to their mineral interests in a way that proportionally distributes the available 3/4ths royalty interest, the deed provides that only the interest granted to the Ealys is subject to Vyvjala's 1/4th royalty interest.

### 3. *Pich v. Lankford*

*Pich* concerned a complicated series of transactions involving a 160-acre tract. 302 S.W.2d at 645. Collins Howard owned all of the surface and minerals and 1/4th of the royalties. *Id.* Through previous reservations, L.A. Pich owned one-half of the interest in the royalties and Dorothy Fuehr owned the remaining 1/4th. *Id.* at 646. Thus:

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Howard 100% | Howard 100% | Pich 1/2 |
|  |  | Fuehr 1/4 |
|  |  | Howard 1/4 |

Howard later conveyed the land to W. J. Sharp, "save and except" an undivided 3/4ths of the *minerals*, "which have been heretofore reserved." *Id.* But 3/4ths of the minerals had not

previously been reserved, although 3/4ths of the royalties had. *Id.* Sharp in turn conveyed the land to A. H. Lankford, "save and except" 3/4ths of the minerals, "which minerals do not belong to [Sharp]." *Id.* Howard and Sharp each later conveyed to Pich any interests they then had in the 3/4ths mineral interest that Howard had reserved in his deed to Sharp and that Sharp had reserved in his deed to Lankford. *Id.* at 646–47.

Lankford sued Pich and Fuehr, claiming that Howard and Sharp had not reserved any mineral interest in their deeds and thus had conveyed nothing to Pich. *Id.* at 674. He also alleged that the earlier reservations through which Pich and Fuehr claimed their royalty interests were void, so that neither Pich nor Fuehr owned any interest in the land. *Id.* Pich and Fuehr argued that Pich owned a 3/4ths interest in the minerals and Fuehr owned one of the corresponding 3/4ths interest in the royalties. *Id.*

The trial court and court of appeals agreed with Lankford, but this Court disagreed and reversed. *Id.* In resolving the dispute, the Court focused on Howard's deed to Sharp and Sharp's deed to Lankford, both of which reserved a 3/4ths mineral interest that had purportedly been previously reserved. *Id.* The Court concluded that both deeds expressly excepted a 3/4ths mineral interest, which is "separate and distinct" from a royalty interest. *Id.* at 648–49. As a result, a 3/4ths mineral interest was "excluded from the grant and [did] not pass to the grantee." *Id.* at 648.

Although the deeds did not expressly "reserve" the 3/4ths interest *for* Howard and Sharp, but instead "only excepted it from the grant," the "legal effect of the language excepting it from the grant was to leave it in the grantor." *Id.* at 650. And because Howard and Sharp then conveyed the interest to Pich, Pich owned the interest. *Id.* The Court explained that although the deeds used

the word "except" instead of "reserve," they fixed the interests in the grantors because "an exception is a mere exclusion from the grant, in favor of the grantor only to the extent that such interest as is excepted may then be vested in the grantor and not outstanding in another." *Id.* Although the terms "are not strictly synonymous, . . . they are often used interchangeably." *Id.*

In the end, the Court held that Pich owned 3/4ths of the minerals, Lankford owned all of the surface and 1/4th of the minerals, and Fuehr owned 1/4th of the royalties. *Id.* Of course, that left only 3/4ths of the royalties, which did not correspond to Pich's and Lankford's 4/4ths mineral interest, raising the question of how much of the remaining 3/4ths royalty interest Pich and Lankford each owned. *Id.* On that point, the Court simply noted, "Ordinarily the royalty interest adjudged to Mrs. Fuehr would be carved proportionately from the two mineral ownerships but [Pich] has asserted in his appeal brief that it should be carved entirely from the mineral interest adjudged to [Pich] and it will be so adjudged." *Id.* Thus:

160-ACRE TRACT

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Lankford 100% | Pich 3/4 | Pich 1/2 |
| | | Fuehr 1/4 |
| | Lankford 1/4 | Lankford 1/4 |

Here, the court of appeals concluded that *Pich* provides a "default rule" that decides this case. — S.W.3d at — (quoting *Pich*, 302 S.W.2d at 650). Today, the Court disagrees with the court

22

of appeals' analysis, holding that the parties' intent as expressed in the deed must control over any "arbitrary rules." *Ante* at __. Again, I agree with the proposition that deeds should not be construed using "default" or "mechanical" rules of construction when the intent of the parties may be ascertained through the unambiguous language of the deed. But as mentioned, so-called "default rules" often reflect and enforce controlling legal realities, and parties often rely on such rules once we announce them. The statement in *Pich* that a separate royalty interest will "ordinarily" be "carved proportionally from" two mineral interests, for example, may simply reflect the interests' inherent nature when the deed does not say otherwise. 302 S.W.2d at 650. For example, assume a deed "grants one-half the mineral interest to A and the other half to B, subject to a reservation of one-fourth of the royalties for the grantor," without addressing how the reservation affects A's and B's interests. In that case, the *Pich* rule might properly apply, not because it is an "arbitrary" rule that conveniently resolves the dispute, but because as a matter of property law, the royalty interest "derives from" the mineral interests conveyed. *Hysaw*, 483 S.W.3d at 9.

We need not decide here whether that same principle applies when a mineral interest that does not include all the royalty interest is itself divided, as occurred in *Pich.* In fact, the Court did not decide in *Pich* that it applied there. 302 S.W.2d at 650. Instead, it merely noted that the principle would "ordinarily" apply, but concluded it did not apply there because Pich agreed that his 3/4ths mineral interest was subject to Fuehr's 1/4th royalty interest. *Id.* Nor need we decide whether the *Pich* rule applies here, because the Ealys and Wenskes agreed through the language of their deed that the Ealys' interest is "subject to" Vyvjala's 1/4th royalty interest. Because the

23

parties' agreement trumps the interests' otherwise inherent nature, we need not rely on rules that are based on their inherent nature here.

But the *Pich* Court's methodological approach to interpreting the deeds at issue there is the same approach the Court took in *Duhig* and *Benge* and the same approach I have taken here. First, the Court looked to see what interest the deed granted and then explained that an interest that is reserved or excepted is "excluded *from the grant* and does not pass to the grantee." *Id.* at 648 (emphasis added). Here, because the deed excepted Vyvjala's 1/4th royalty interest, that interest was excluded from the grant and did not pass to the Ealys. Second, the Court noted that reservations and exceptions, although not technically synonymous, both limit the interest described in the granting clause. *Id.* at 650. Here, although the deed "reserved" the Wenskes' interest and "excepted" Vyvjala's interest, the distinction is irrelevant because both limit the interest that was "subject to" the reservation and exceptions—the interest granted, sold, and conveyed to the Ealys. And third, as mentioned, the Court recognized that the parties' agreement controls even when a royalty interest might otherwise correspond proportionally to multiple mineral interests.

### 4.    *Bristow v. Selman*

Mae Weeden conveyed a 92-acre tract of land to E. L. Bristow in a deed that reserved for Weeden a 1/8th royalty interest. *Bristow v. Selman*, 402 S.W.2d 520, 521 (Tex. Civ. App.—Tyler 1966, writ ref'd n.r.e.). Bristow later conveyed the land to R. E. Selman in a deed that reserved for Bristow 1/4th of the mineral estate. Although the deed referred to Weeden's deed as the source of Bristow's title, it did not except or address Weeden's 1/8th royalty interest. *Id.* at 523. Bristow and Selman later disagreed over how much of the royalty interest each party owned. *Id.*

Like the Court's holding here, the trial court held that Weeden's 1/8th royalty interest should be "charged proportionally" to Selman's and Bristow's mineral interests. *Id.* at 523. The court of appeals reversed, holding that Selman owned a 3/4ths mineral and royalty interest and Bristow owned a 1/4th mineral interest but only a 1/8th royalty interest. *Id.* at 524. Because the deed conveyed to Selman "an absolute fee simple title to all interest in the land except a 1/4th interest in the minerals," the court rejected the argument that the deed conveyed 3/4ths of the minerals "subject to a proportionate reduction of the reserved royalty." *Id.* at 523. The court concluded that construing the deed in that manner "would be contrary to the very language used in the granting clause because the deed by its express terms purported to convey all the interest in the land except the reserved 1/4th interest in the minerals." *Id.* The court explained that the deed created "distinct and severable" interests: Selman's 3/4ths interest in the minerals, Bristow's 1/4th interest in the minerals, and Weeden's 1/8th interest in the royalties. *Id.* at 524. And since the deed conveyed a full 3/4ths of the minerals not subjected to Weeden's royalty interest, it conveyed to Selman "an unencumbered, unrestricted 3/4ths of the minerals." *Id.*

In his application for writ of error to this Court, Bristow argued that the court's holding was contrary to the *Pich* rule that the royalty interest "would ordinarily be carved proportionately from the two mineral ownerships." 406 S.W.2d at 896. The Court rejected that argument and expressly agreed with the court of appeals, noting only briefly that the Court was "not concerned with the *Duhig* rule" in *Pich* and the *Pich* rule "should be read in that light." *Id.*

By agreeing with the court of appeals, the Court agreed that the *Pich* rule provides only a substantive default principle that must yield to the deed's plain language. Addressing a term that

25

provides the opposite of the term in this case, *Bristow* illustrates how the deed's language must control over the presumption on which the Court relies today. The Court today purports to reject *Pich*'s "arbitrary" rule. But it nevertheless applies the *Pich* rule's presumption, *ante* at __, to hold that Vyvjala's royalty interest must be proportionally deducted from the Ealys' and Wenskes' mineral interests because the Court "see[s] no expression" of a contrary intent. *Ante* at __.

In *Bristow*, as in this case, the deed conveyed all of the interest in the property to the grantee and reserved for the grantor a portion of the mineral interest. And in both cases, the grantor owned less than all of the royalty interest because of a prior reservation. The difference is that the *Bristow* deed did not make the grant subject to the prior reservation while the Wenskes' deed did. Focusing on the interest the deed granted to Selman, the *Bristow* court concluded that Selman owned all of the mineral interest that was not specifically reserved (including the royalty rights corresponding to that interest) because the deed conveyed "all the interest in the land except the reserved 1/4th interest in the minerals." 402 S.W.2d at 523.

Following the same methodological approach here, we must focus first on the interest that the deed grants to the Ealys—all of the interests in the 55-acre tract. Pursuant to this deed, the Ealys own all of that interest that was not specifically reserved or excepted. If the deed had reserved the Wenskes' mineral interests but had not excepted Vyvjala's royalty interest, the Ealys—like Selman—would own all of the unreserved fraction of the mineral interest and all of its corresponding royalty interest. But this deed made the Ealys' interest subject to both the Wenskes' reserved mineral interest and Vyvjala's previously reserved royalty interest. As a result, the Ealys'

interest includes "all the interest in the land except the reserved [3/8ths interest in the minerals]" *and* the excepted 1/4th interest in the royalties.

### 5. *Bass v. Harper*

Finally, we must consider *Bass v. Harper*, 441 S.W.2d 825 (Tex. 1969). Thomas Bass acquired a 90-acre tract of land by a deed in which the grantor reserved a 6/14ths royalty interest. *Id.* at 825. Bass thus owned the entire mineral interest but only an 8/14ths royalty interest. *Id.* Bass later conveyed an undivided 1/2 interest in the land to W. O. Miller in a deed that expressly made the grant subject to the prior reservation of the 6/14ths royalty interest. *Id.* at 826. The issue was how much of the remaining 8/14ths royalty interest Bass and Miller each owned:

| SURFACE | MINERALS | ROYALTIES |
|---|---|---|
| Bass 1/2 | Bass 1/2 | Prior grantor 6/14 |
| Miller 1/2 | Miller 1/2 | Bass/Miller 8/14 |

The trial court and court of appeals held that Bass's deed conveyed to Miller 1/2 of all of the interests that Bass then owned, subject to the prior grantor's royalty reservation. *Id.* at 825. In their view, Miller received a 1/2 surface interest and a 1/2 mineral interest, but only a 4/14ths royalty interest, which was 1/2 of the 8/14ths that Bass then owned. *Id.* at 826. And the subject-to clause did not reduce the amount of Miller's royalty interest because it "merely protect[ed] Bass on his warranty in the conveyance of" the 4/14ths royalty. *Id.* Thus:

27

| SURFACE | MINERALS | ROYALTIES |
|---------|----------|-----------|
| Bass 1/2 | Bass 1/2 | Prior grantor 6/14 |
| | | Bass 4/14 |
| Miller 1/2 | Miller 1/2 | Miller 4/14 |

This Court disagreed and held that Bass retained 7/14ths (1/2) of both the minerals and the royalties, and although Miller owned 1/2 of the minerals, he only owned 1/14th of the royalties. *Id.* at 828. Thus:

| SURFACE | MINERALS | ROYALTIES |
|---------|----------|-----------|
| Bass 1/2 | Bass 1/2 | Prior grantor 6/14 |
| | | Bass 7/14 |
| Miller 1/2 | Harper 1/2 | Miller 1/14 |

The Court rejected the argument that Bass's deed to Miller conveyed only 1/2 of the royalty interest *he then owned* (4/14ths), because the deed's "granting clause conveys 'all that certain undivided half interest' in 90 acres of land," and included "no words limiting the grant to one-half of whatever interest Bass owned." *Id.* at 827. The deed thus conveyed to Miller 1/2 (7/14ths) of

the surface, mineral, and royalty interests. But the deed also contained a subject-to clause: "It is also clear that *the grant itself* 'is subject to the mineral reservations' (6/14ths) contained in the deed." *Id.* (emphasis added). Thus, "under the specific wording of the instrument, Bass granted and conveyed to Miller an undivided one-half (7/14ths) of the [royalty interest], and . . . *the one-half interest granted (7/14ths)* was *subject to* the outstanding 6/14ths royalty." *Id.* at 828 (emphasis added). As a result, only Miller's mineral interest was "subject to" all of the prior grantor's 6/14ths royalty interest, so the deed ultimately "conveyed 1/14th of the royalty, not 4/14ths as held by the courts below." *Id.*

The court of appeals concluded that *Bass* is not controlling here for two reasons. First, the court noted that "in *Bass*, the disputed conveyance dealt solely with fractional ownership of the minerals themselves." — S.W.3d at —. The court's observation is correct—the *Bass* deed's granting clause granted "an undivided one-half interest in the land" while the Wenskes' deed's granting clause grants all the land—but the court made no effort to explain why that difference matters. In terms of how we should construe the deed, I do not believe it does. As I have done in construing the Wenskes' deed, the Court construed the *Bass* deed by determining *exactly what* was "subject to" *exactly what*.

The Court concluded in *Bass* that it was "clear" that the only thing "subject to" anything was "the grant itself"—the conveyance of a 1/2 interest in the land to Miller. 441 S.W.2d at 827 ("The Grant, not the Warranty, is made subject to the outstanding interests."). And what that grant was subject to was "'the mineral reservations' (6/14ths) contained in the deed." *Id.* Because "the

one-half interest granted (7/14ths) was [the only thing] subject to [all of] the outstanding 6/14ths royalty," the deed ultimately conveyed only a 1/14th royalty interest to Miller. *Id.* at 828.

In the same way, here, the only thing "subject to" anything is "the grant itself"—the conveyance of all the land to the Ealys. And what that grant is subject to is (1) the reservation for the Wenskes of a 3/8ths mineral interest and (2) the exception for Vyvjala's 1/4th royalty interest. The 3/8ths mineral interest reserved for the Wenskes is not "subject to" anything. Because the conveyance of all the land to the Ealys is the only thing subject to both the Wenskes' 3/8ths mineral interest and Vyvjala's 1/4th royalty interest, the deed ultimately conveyed only a 5/8ths mineral interest and a 3/8ths royalty interest.

The second distinction the court of appeals noted was that "*Bass* says nothing about how to apportion a separate royalty estate that corresponds with the minerals." — S.W.3d at —. While that observation is also correct, it is equally irrelevant. We do not need to rely on *Bass* or any other authority to determine "how to apportion a separate royalty estate that corresponds with the minerals" because Vyvjala's separate royalty estate does not correspond with the mineral interests. The deed's plain language provides that the interest conveyed to the Ealys is subject to her royalty estate, regardless of how—in the absence of such language—the right to royalties might otherwise correspond to the mineral interests.

The Court concludes today that *Bass* is inapplicable and "does not compel a specific outcome in this case," *ante* at __, but for different reasons. First, according to the Court, the *Bass* Court's "analysis relied, in large part, on the location of the subject-to clause in the deed." *Ante* at __ (quoting *Bass*, 441 S.W.2d at 827 ("The instrument in question does not relate the outstanding

30

mineral royalty interests to the warranty. It could have done so, but it is tied specifically to the grant.")). To an extent, at least, the Court's observation that the *Bass* Court's analysis relied on "the location" of the subject-to clause within the deed is correct. But that fact does not distinguish the *Bass* deed from the Wenskes' deed—or that case from this case—at all.

The "analysis" to which the Court refers was the *Bass* Court's rejection of the trial court's conclusion that the deed's subject-to clause did not modify the conveyance but instead merely protected Bass on his warranty. *Bass*, 441 S.W.2d at 826. The Court disagreed "that the 'subject to' provision refers only to the warranty," because the provision was tied directly to the granting clause that described the interest conveyed (an undivided 1/2 interest in the land), and the warranty was not part of the conveyance. *Id.* The Court rejected the trial court's conclusion because under the deed's plain language, "[t]he Grant, not the Warranty, is made *subject to* the outstanding interests." *Id.* at 827 (emphasis added). So although the deed certainly could have related the outstanding 6/14ths royalty interest to the warranty, it did not; instead, the subject-to clause "tied" the outstanding royalty interest directly to the grant itself.

In this sense, the Court is correct that the *Bass* Court's "analysis relied, in large part, on the location of the subject-to clause in the deed." *Ante* at __. But in that sense, *Bass* is indistinguishable from this case. Like the *Bass* deed, the subject-to provision in the Wenskes' deed is tied directly to the granting clause that describes the interest conveyed (the entire interest in the land). Under the deed's plain language, the "Grant" itself is "made *subject to* the outstanding interests." *Bass*, 441 S.W.2d at 827 (emphasis added). The subject-to clause "ties" Vyvjala's outstanding royalty interests directly to the grant itself.

31

Second, the Court reasons that *Bass* is inapplicable here because, since *Bass*, "our rules for deed construction have moved even more decisively toward (1) a focus on the intent of the parties, expressed by the language within the four corners of the deed, and (2) harmonizing all parts of an instrument, even if particular parts appear contradictory or inconsistent." *Ante* at __ (citing *Luckel*, 819 S.W.2d at 462). But again, while that observation may be correct, it fails to explain why the *reasoning* in *Bass* is inapplicable here. As explained, the *Bass* Court clearly "focus[ed] on" the parties' intent, "as expressed by the language within the four corners of the deed," and the Court today does not demonstrate otherwise. And the *Bass* Court was not concerned with contradictory or inconsistent deed provisions at all. The only time the Court used any form of either of those words was when it remanded the case "for further proceedings not inconsistent with" the Court's opinion. *Bass*, 441 S.W.2d at 828.

Finally, the Court suggests that *Bass* might be inapplicable because, "although the subject-to clause in *Bass* was tied to the grant and not the warranty, in general, the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding." *Ante* at __ (citing *Walker v. Foss*, 930 S.W.2d 701, 706 (Tex. App.—San Antonio 1996, no writ); Ernest E. Smith, *The "Subject To" Clause*, 30 ROCKY MTN. MIN. L. INST. 15–1 (1985); RICHARD W. HEMINGWAY, THE LAW OF OIL AND GAS § 9.1 (3d ed. 1991)). Ironically, the Court thus relies on an "arbitrary rule" to treat the phrase "subject to" as only protecting a warranty when this deed's plain language uses the phrase to limit the interest granted. Regardless of whether the Court's observation is correct, even the Court agrees that here, "there is no question that" the deed's subject-to clause is tied to the grant and thus "the interest

32

granted to the Ealys was 'limited by' or 'subservient to' the Vyvjala [royalty interest]." *Ante* at __ (citing *Kokernot*, 231 S.W.2d at 531).[7]

I can find no valid reason in the Court's opinion for its conclusion that *Bass* is inapplicable here or that, "in light of our evolving mineral-deed-construction jurisprudence, courts and practitioners should view *Bass* as limited to the specific language at issue in that case." *Ante* at __. The *Bass* court simply construed the deed by following the same methodological approach it followed in its prior cases: determining *exactly what* was "subject to" *exactly what*, and then enforcing the deed as written. Because I find nothing in the Court's opinion to explain why that approach is inappropriate, and because I believe it is in fact the correct approach, I find *Bass* to be helpful here, if not controlling.

### III.
### Conclusion

Based on the deed's plain language, the interest granted to the Ealys is subject to all of Vyvjala's royalty interest. Both the inherent nature of the interests and our relevant precedent support this conclusion. Thus, (1) the Ealys own all of the surface of the 55-acre tract, a 5/8ths mineral interest, and a 3/8ths royalty interest; (2) the Wenskes own a 3/8ths mineral interest and

---

[7] The Court also suggests that, because the deed subjects the grant to the "Exceptions from Conveyance and Warranty," the deed merely "indicates an intent to avoid a breach warranty . . . rather than a clear attempt to reserve a full 3/8ths interest, free of the Vyvjala [interest], to the Wenskes." *Ante* at __. No doubt, by excepting Vyvjala's interest from the warranty, the deed indicates the Wenkes' intent to "avoid a breach of warranty." And if the deed merely excepted Vyvjala's interest from the warranty, the Court would be correct. But the Court simply ignores the fact that the deed expressly subjects the grant to the "Exceptions *from Conveyance* and Warranty." By excepting Vyvjala's interest from both the conveyance and the warranty, the deed clearly expresses the intent to *both* avoid a breach of warranty *and* except Vyvjala's interest from the grant of the Ealys' interest. The Court provides no justification for ignoring the exception's "from Conveyance" language.

the corresponding 3/8ths royalty interest; and (3) Vyvjala owns the remaining 2/8ths royalty interest. Because the Court holds otherwise, I respectfully dissent.

                 _____
Jeffrey S. Boyd
Justice

Opinion delivered:  June 23, 2017