**Opinion filed August 17, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00154-CV

_____

**ECHOLS MINERALS, LLC; TOC HOLDINGS, LLC; GULF WIND RESOURCES, LLC; ASRO MANAGEMENT, LLP; DAVID WEAVER ECHOLS; ROY LEE TODD; NANCY K. CARTER; CATHY L. HUTCHESON; DOUGLAS KIT NELSON; LEE KEITH TILTON; TERRA SHAMARI CONE; DANIEL ELI DENNISON; JOSHUA MARTIN RUDIN; CEILIA KAISER; AND KIMBERLY LACANNE, Appellants**

**V.**

**DONALD MAC GREEN, TRUSTEE OF THE DONALD AND BETTY LOU IRREVOCABLE TRUST, AND INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY LOU GREEN; AND FORTIS MINERALS II, LLC, Appellees**

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 7505**

**O P I N I O N**

This appeal concerns a reservation of a 33.25/278.5 non-participating royalty interest (NPRI)[1] in a 1952 general warranty deed and an application of *Duhig v. Peavy-Moore Lumber Co.*, 144 S.W.2d 878 (Tex. 1940). The trial court granted summary judgment in favor of Appellees wherein it declared that the reservation was ineffective under *Duhig*. Appellants[2] bring three issues challenging the trial court's grant of summary judgment. We reverse and remand.

*Background Facts*

Prior to 1942, J.W. Meek and his wife Media Meek owned all of the surface and minerals underlying the N/2 of Section 1, Block 35, T-2-N, Martin County, Texas, containing 320 acres of land. In 1942, the Meeks conveyed to F. Haynes, Robert Bruce Haynes, and D'Lorz Inez Haynes the north half of Section 1, Block 35, Township 2 North, in Martin County, save and except "all of the Oil, Gas, and other mineral in, on or under the North West 1/4 of the North East 1/4 of said Tract."

In 1944, Floyd Haynes and his wife Lola H. Haynes, Robert Bruce Haynes, and D'Lorz Inez Haynes conveyed the following property to K. M. Regan in a mineral deed:

> an undivided One-Half (1/2) interest in and to all of the oil, gas and other minerals in and under and that may be produced from the

---

[1]"A non-participating royalty interest is 'an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the [b]onus payable for, or the delay rentals to accrue under oil, gas, and mineral leases executed by the owner of the mineral fee estate.'" *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015) (quoting Lee Jones, Jr., *Non-Participating Royalty*, 26 TEX. L. REV. 569, 569 (1948) (footnote omitted)).

[2]Appellants are Echols Minerals, LLC, TOC Holdings, LLC, Gulf Wind Resources, LLC, Asro Management, LLP, David Weaver Echols, Roy Lee Todd, Nancy K. Carter, Cathy L. Hutcheson, Douglas Kit Nelson, Lee Keith Tilton, Terra Shamari Cone, Daniel Eli Dennison, Joshua Martin Rudin, Ceilia Kaiser, and Kimberly LaCanne. Other than Echols Minerals, the remaining appellants are referred to by the parties as "Rule 39 Defendants."

following described lands situated in Martin County, State of Texas, to wit:

> Being 280 acres of land, and being the Northwest Quarter (NW¼) and all of the South-half (S½) and the Northeast Quarter (NE ¼) of the Northeast Quarter (NE¼) of section one (1) Block Thirty-five (35) Township 2 North T & P Ry Co Survey

For reference, we will refer to this deed as the "1944 deed."

Also in 1944, Floyd Haynes, acting as Guardian for Roselyn Raye Haynes, a minor, executed a separate mineral deed conveying to K. M. Regan "an undivided One-Half (1/2) interest in and to all of the oil, gas and other minerals in and under and that may be produced" from the same property. For reference, we will refer to this second 1944 deed as the "1944 guardian deed." A declaration of interest executed in 1949 by Robert Bruce Haynes, Floyd Haynes, D'Lorz Inez Haynes, and Lola H. Haynes declared that at the time of the 1944 deed and the 1944 guardian deed, Floyd Haynes, Robert Bruce Haynes, D'Lorz Inez Haynes owned an undivided 5/6 interest in the tract and Roselyn Raye Haynes owned an undivided 1/6 interest in the tract.

In 1952, Floyd Haynes and his wife Lola Haynes, Robert Bruce Haynes and his wife Mary E. Haynes, and D'Lorz Inez Haynes conveyed to Lois Madison: "all that certain undivided 5/6 interest in and to the North 1/2 of Section I, Block 35, Tsp. 2N, T & P Ry. Co. Survey, Martin County, Texas." The 1952 general warranty deed provided that the Haynes grantors did not own the minerals in the northwest quarter of the northeast quarter of that half-section and that the deed did not convey the minerals under that portion of the tract. The 1952 deed further provided that the Haynes grantors reserved "unto themselves an undivided 33.25/278.5 non-participating royalty interest in all minerals in, on, under and that may be produced"

3

from the 278.5-acre tract[3] that they conveyed to Madison.  This deed made no reference to the 1944 mineral conveyance to Regan.  For reference, we will refer to this deed as the "1952 NPRI deed."

Also in 1952, Floyd Haynes, as guardian of the person and estate of Roselyn Ray Haynes, a minor, conveyed to Lois Madison "all of the right and title of" Roselyn Ray Haynes described as "[a]n undivided one-sixth (1/6th) interest" in the north half of section one "subject to all outstanding royalty and mineral conveyances."  For reference, we will refer to this second 1952 deed as the "1952 guardian deed."

Appellant Echols Minerals filed the underlying suit against Appellee, Donald Mac Green, as trustee of the Donald and Betty Lou Green Trust.  Echols Minerals claims an interest as a successor-in-interest through the Haynes grantors.  Specifically, Echols Minerals asserts that it owns one-half of the 33.25/278.5 NPRI retained by the Haynes grantors in the 1952 deed.

Appellee Green filed a counterclaim wherein he asserted that the Green Trust is a successor-in-interest to Madison, and that the reservation of the NPRI in the 1952 NPRI deed was ineffective under *Duhig* because the Haynes grantors "failed to except the previously conveyed mineral interest" that they conveyed to Regan in 1944.  Green also joined as parties the Rule 39 Defendants that are Appellants, asserting that they are "purported successors" to the Haynes grantors.  Green also added Fortis Minerals II, LLC as a Rule 39 Defendant on the basis that it was a successor-in-interest to Madison.  Fortis Minerals filed a pleading wherein it joined in Green's counterclaims.  For the sake of clarity, our references to the Rule 39 Defendants excludes Fortis Minerals.

---

[3]We will refer to the tract referenced in the 1952 NPRI deed as the 278.5-acre tract based upon the denominator used by the Haynes grantors in the NPRI that they reserved.

4

Green filed a motion for partial summary judgment wherein he asserted that, under *Duhig*, the reservation by the Haynes grantors of a 33.25/278.5 NPRI in the 1952 NPRI deed was ineffective because the grantors did not expressly except the outstanding undivided one-half mineral interest that they had previously conveyed to Regan. Green sought a declaratory judgment that the reservation of the NPRI in the 1952 NPRI deed was ineffective. Fortis Minerals joined in Green's motion for partial summary judgment, seeking the same declaratory relief.

Echols Minerals and the Rule 39 Defendants responded to Green's and Fortis Minerals's motion for partial summary judgment by asserting that the 1952 NPRI deed must be read together with the 1952 guardian deed. Specifically, Echols Minerals and the Rule 39 Defendants assert that the "subject to" clause in the 1952 guardian deed must be read as also applying to the 1952 NPRI deed.

As noted previously, the trial court granted summary judgment in favor of Echols Minerals and Fortis Minerals. Because the parties resolved the issue of attorney's fees in a Rule 11 Agreement, the trial court's summary judgment was a final judgment.

*Analysis*

Appellants bring three issues challenging the trial court's grant of summary judgment in favor of Appellees. Appellants' first issue generally challenges the summary judgment. They assert in their second issue that *Duhig* does not support the summary judgment with respect to Green, and they contend in their third issue that *Duhig* does not support the summary judgment with respect to Fortis Minerals.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R.

5

CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017).

The resolution of this appeal turns on an interpretation of the 1952 NPRI deed, and if applicable, the 1952 guardian deed. An appellate court may only construe a deed as a matter of law if it is unambiguous. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 613 (Tex. 2005)). If a deed is worded in such a way that it can be given a certain or definite legal meaning, then the deed is not ambiguous. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018). Here, the parties do not contend that the deeds are ambiguous, nor do we find them to be ambiguous.

Our task when construing an unambiguous deed is to "ascertain the intent of the parties from the language in the deed" as expressed within the "four corners" of the instrument. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The four-corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (citing *Luckel*, 819 S.W.2d at 461). The intent that governs is not the intent that the parties meant but failed to express but, rather, the intent that is expressed. *Luckel*, 819 S.W.2d at 462.

*Should we read the two 1952 deeds together?*

A preliminary question that we must address is Appellants' contention that the 1952 guardian deed must be read together with the 1952 NPRI deed. Appellants contend that the "deeds . . . were signed together and are therefore treated as one."

In *Rieder v. Woods*, the Texas Supreme Court addressed the circumstances under which contracts are to be construed together. 603 S.W.3d 86, 94 (Tex. 2020). "[U]nder appropriate circumstances, 'instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the

instruments at different times and the instruments do not expressly refer to each other.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). "Where appropriate, 'a court may determine, as a matter of law,' that multiple separate contracts, documents, and agreements 'were part of a single, unified instrument.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840). "In determining whether multiple agreements are part and parcel of a unified instrument, a court may consider whether each written agreement and instrument was 'a necessary part of the same transaction.'" *Id.* (quoting *Bd. of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)).

"[W]hen construing multiple documents together, courts must do so with caution, bearing in mind that tethering documents to each other is 'simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation.'" *Id.* at 94–95 (quoting *Miles v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959)). With respect to construing two or more instruments relative to the conveyance of interests in lands, instruments between the same parties may be construed together, whereas instruments between different parties sometimes may be construed together when forming a single transaction. *Bartel v. Pick*, 643 S.W.2d 224, 226 (Tex. App.—Fort Worth 1982), *aff'd*, 659 S.W.2d 636 (Tex. 1983) (citing *Miles*, 321 S.W.2d at 62)).

The court in *Rieder* ultimately held that the two agreements at issue were not "components of a single, unified instrument." *Id.* at 95. The court reached this conclusion by comparing the terms of the two agreements. *Id.* It noted that the agreements had different parties and different signatories. *Id.* It also noted that the two agreements did not reference each other or incorporate the terms of one into the other. *Id.* at 95–96; *see Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied) (noting that it is proper to consider an instrument that is incorporated by reference into a deed).

Appellants cite *Terrell v. Graham* for the proposition that "two instruments should be considered together and construed as one transaction in that both were executed at the same time, between the same parties and related to the same tract of land." 576 S.W.2d 610, 611 (Tex. 1979). They also cite *Rudes v. Field*, 204 S.W.2d 5, 7 (Tex. 1947) and *Bowers v. Taylor*, 263 S.W.3d 260, 265 (Tex. App.—Houston [1st Dist.] 2007, no pet.) for the same proposition. These cases are distinguishable from the circumstances in this case. For example, the deeds in *Terrell* were reciprocal deeds that had a testamentary aspect to them executed between brothers. 576 S.W.2d at 611; *see Jordan v. Parker*, 659 S.W.3d 680, 686 (Tex. 2022).

Here, the grantors in the 1952 NPRI deed are Floyd Haynes and his wife Lola Haynes, Robert Bruce Haynes and his wife Mary E. Haynes, and D'Lorz Inez Haynes. They conveyed an undivided 5/6 interest in the property to Madison for a recited consideration of $27,825. The deed is dated January 6, 1952, and it was executed by the grantors in January 1952, February 1952, and March 1952. The 1952 NPRI deed was filed for record on April 1, 1952. As noted previously, the grantors in the 1952 NPRI deed reserved an undivided 33.25/278.5 non-participating royalty interest.

In the 1952 guardian deed, the grantor is Floyd Haynes as guardian of Roselyn Ray Haynes, a minor. In the deed, he conveyed an undivided 1/6 interest to Madison for a recited consideration of $5,018.08. The guardian deed also recites that the purchase price for the entire tract was $33,390. The 1952 guardian deed is dated February 6, 1952, and Floyd Haynes executed it on the same date. The 1952 guardian deed was also recorded on April 1, 1952. As noted previously, the 1952 guardian deed does not contain a reservation of an NPRI, but it does contain a provision stating that it was "subject to all outstanding royalty and mineral conveyances."

8

The 1952 NPRI deed and the 1952 guardian deed have the same grantee (Madison). Additionally, they deal with the same surface estate, and they were executed at roughly the same time. However, the two deeds have different grantors, convey different interests, and importantly, have different terms. The adult Haynes grantors conveyed an 5/6 undivided interest to Madison with the NPRI reservation and no "subject to" clause. The guardian deed conveyed the minor's 1/6 interest, and it contained a "subject to" clause but no NPRI reservation. The two deeds do not constitute a "single, unified instrument" because the deeds are stand-alone instruments of conveyance that are effective independently of each other. *See Rieder*, 603 S.W.3d at 94. Furthermore, the 1952 NPRI deed does not incorporate the 1952 guardian deed by reference. *See Graham*, 429 S.W.3d at 655.

The two deeds could have easily included the same terms, but they do not. Appellants essentially ask for the "subject to" clause in the guardian deed to be added as a term to the 1952 NPRI deed. Courts refrain from rewriting contracts and deeds to add terms that the parties did not include. *Devon Energy Prod. Co., L.P. v. Sheppard*, 668 S.W.3d 332, 343 (Tex. 2023); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained."). "In general, absent ambiguity, fraud, accident, or mistake, courts will not consider extrinsic evidence in construing the intentions of the parties to the deed." *Hughes v. CJM Res., LP*, 640 S.W.3d 623, 628 (Tex. App.—Eastland 2022, no pet.). Here, Appellants do not allege an ambiguity, fraud, accident, or mistake in the 1952 NPRI deed. Because the 1952 NPRI deed is unambiguous, we are restricted to its four corners. *See Luckel*, 819 S.W.2d at 461.

*Duhig and its Progeny*

*Duhig* is an oil and gas case from 1940 that is often cited, particularly when addressing older conveyances. We described its facts and holding as follows in *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*:

> Duhig owned a tract of land and one-half of the underlying minerals. Duhig assigned the land by warranty deed. The deed purported to convey all of the surface and minerals, but it also contained a reservation to the grantor of one-half of the mineral estate. Peavy–Moore ultimately acquired the tract. A dispute arose between it and Duhig's descendants over the ownership of the mineral estate. The parties agreed that one-half of the mineral estate was owned by a third party. Duhig's descendants contended that the mineral reservation vested them with the remaining one-half. If correct, Duhig's deed transferred no mineral interest despite the language of its granting clause. The supreme court held that Duhig's descendants were estopped from claiming any of the mineral estate and that Peavy–Moore owned the disputed one-half mineral interest.

192 S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied); *see Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 601 (Tex. App.—Eastland 2005, no pet.) (containing another recitation of the facts and holding in *Duhig*).

We determined in *Stewman Ranch* that *Duhig* was inapplicable to the conveyance at issue because the grantors did not purport to convey title that they did not own and thus, there was no failure of title. 192 S.W.3d at 811. We held in *Gore Oil Co.* that *Duhig* did not apply to a deed that contained a limiting clause making it subject to all outstanding reservations, conveyances, and restrictions. 158 S.W.3d at 601. Conversely, we held in *Blanton v. Bruce* that the rule in *Duhig* applied to a conveyance because the deed at issue conveyed a definite interest in the property that the grantor did not fully possess, and that those claiming under the grantor were estopped to assert any title to the reserved minerals until those claiming under the grantee were made whole. 688 S.W.2d 908, 913–14 (Tex. App.—Eastland 1985, writ ref'd n.r.e.).

10

The Texas Supreme Court has addressed the application of *Duhig* in two recent cases. In *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, the court described the facts and holding in *Duhig* as follows:

> *Duhig* involved a deed in which W. J. Duhig conveyed land to the Miller–Link Lumber Company. The deed conveyed all of the interests in the land to Miller–Link, except it reserved for Duhig "an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land." The deed did not mention, however, that a third party already owned 1/2 of the mineral interest. The deed contained a general warranty covering "the said premises," which meant "the land described in the granting clause," and therefore warranted "the full fee simple title to the land except an undivided one-half interest in the minerals." We held that Duhig breached the warranty the moment he conveyed the property because he could not both retain 1/2 the minerals and convey 1/2 to Miller–Link when the third party already owned 1/2. Although Duhig would be liable to Miller–Link for damages, the Court recognized that, by "virtue of the deed containing the warranty," Duhig held "the very interest, one-half of the minerals, required to remedy the breach." Applying an equitable remedy, the Court held that Duhig was estopped from claiming the 1/2 mineral interest he had reserved for himself; instead, Miller–Link received that interest as a remedy for Duhig's breach of the deed's warranty.

546 S.W.3d 110, 118 (Tex. 2018) (internal citations omitted) (citing *Duhig*, 144 S.W.2d at 879–81). The court in *Perryman* held that the conveyance at issue did not present a *Duhig* problem because the conveyance did not involve a reserved interest, but rather an exception from the grant. *Id.* at 113, 119.

More recently, the Texas Supreme Court conducted a more thorough analysis of *Duhig* in *Trial v. Dragon*, 593 S.W.3d 313 (Tex. 2019). The court in *Dragon* noted that the rule in *Duhig* arises from the "estoppel by deed" doctrine. *Id.* at 318. The court further noted that "*Duhig* applies the doctrine of estoppel by deed to a very distinct fact pattern, and its holding is narrow and confined to those specific facts." *Id.* The court described the facts and holding in *Duhig* as follows:

The grantor, W.J. Duhig, owned a tract of real property subject to a 1/2 mineral reservation from a previous owner. Duhig purported to convey all of that land and the mineral estate to a subsequent purchaser while attempting to reserve 1/2 of the minerals for himself. The reservation clause stated specifically that "it is expressly agreed and stipulated that the grantor [Duhig] herein retains an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land." But the warranty deed did not mention the prior owner's 1/2 reservation, nor did it indicate that Duhig did not own all of the minerals.

This Court explained that, in that situation, the grantor breached his general warranty in the deed by appearing to convey more than he actually did. Had the Court stopped its analysis with that observation, then the holding would have rested exclusively on breach of warranty, with the remedy being self-correcting—that any reservation is rendered ineffective until the shortfall in the warranty is remedied, which would presumably be captured by damages. But the Court went on to apply equitable principles because the grantor, Duhig, had and held "in virtue of the deed containing the warranty the very interest, one-half of the minerals, required to remedy the breach" at the very instance of execution and breach.

*Dragon*, 593 S.W.3d at 318–19 (internal citations omitted) (citing *Duhig*, 144 S.W.2d at 878–80). The court in *Dragon* noted that *Duhig* "still has its place in our jurisprudence," and that:

[it] stands for the proposition that if a grantor reserves an interest and breaches a general warranty at the very time of execution, then an immediate passing of title is triggered to the grantee for that property that was described in the reservation—in other words, if the grantor owns the exact interest to remedy the breach *at the time of execution* and equity otherwise demands it.

*Id.* at 319. The court in *Dragon* determined that *Duhig* was inapplicable to the conveyance at issue because the grantor did not own the interest required to remedy the breach at the time of the deed's execution. *Id.*

The Texas Supreme Court's holding in *Dragon* is a limitation on the equitable remedy furnished by *Duhig*. We recognized this limitation in *Brooke-Willbanks v.*

12

*Flatland Mineral Fund, LP* when we cited *Dragon* for the proposition that "the holding in *Duhig* is narrow in scope and confined to the specific facts of that case." 660 S.W.3d 559, 566 (Tex. App.—Eastland 2023, no pet.) (citing *Dragon*, 593 S.W.3d at 318)). Some legal commentators have noted that "[t]he *Duhig* Rule is clearly on life support. Is it just waiting for its obituary to be written?" Emily A. Fitzgerald and Conrad D. Hester, *Postmodern Duhig – The Future*, State Bar of Tex., TXCLE Oil, Gas and Min. Title Examination Course 2-III, 2020 WL 3978492 (2020).

In summary, there is a two-part test to determine if *Duhig* is applicable to a conveyance. First, we must determine if there is "a *Duhig* problem" with the conveyance—did the grantor convey an interest greater than what he or she possessed, such that there is an over-conveyance and therefore, a failure of title, while at the same time reserving an interest? *See Dragon*, 593 S.W.3d at 318–19; *Perryman*, 546 S.W.3d at 113; *Stewman Ranch*, 192 S.W.3d at 811. If there is a *Duhig* problem, then we must determine if *Duhig* provides the grantee and its successors a remedy—did the grantor own the very interest required to remedy the breach of warranty at the time of the conveyance so as to nullify or reduce the grantor's reservation? *See Dragon*, 593 S.W.3d at 318–19.

*Is there a "Duhig Problem" with the 1952 NPRI Deed?*

At the time that the Haynes grantors executed the 1952 NPRI deed, they owned 5/6 of the surface and 1/3 of the mineral estate to the 278.5-acre tract conveyed to Madison. Their ownership of 1/3 of the mineral estate was the result of the fact that they originally owned 5/6 of the mineral estate, but they subsequently conveyed 1/2 to Regan. In the 1952 NPRI deed, the Haynes grantors conveyed 5/6 of the mineral estate to the 278.5-acre tract by way of a general warranty deed without any reference to the prior conveyance of 1/2 of the mineral estate to Regan. Thus, the 1952 NPRI deed has a "*Duhig* Problem" because the Haynes grantors

13

conveyed more interest in the mineral estate than they owned, while at the same time reserving an interest.

*Is a remedy available under Duhig after Dragon?*

Green and Fortis Minerals assert that "[b]y conveying an undivided 5/6 interest in the Property but failing to except the outstanding 1/2 mineral interest, there was a shortage of title and the remedy is to decrease the Haynes Grantors' interest." They cite *Blanton* and *Walker v. Campuzano Enterprises* for the proposition that "[t]he loss from the over-conveyance is borne by the grantor, and the grantee is entitled to any interest the grantor purports to reserve." *Blanton*, 688 S.W.2d at 912; *Walker v. Campuzano Enters., Ltd.*, No. 02-10-00061-CV, 2011 WL 945167, *4 (Tex. App.—Fort Worth March 17, 2011, no pet.) (mem. op.) (not designated for publication). Green and Fortis Minerals assert that "the law required that the grantee acquire the interest that the Haynes Grantors purported to reserve for themselves." In this regard, Green and Fortis Minerals contend that the Haynes grantors must bear the burden of the over-conveyance, and that Madison was entitled to any interest that the Haynes grantors purported to reserve. They cite *Blanton* for the proposition that those claiming under the Haynes grantors "are estopped to assert any title to the reserved minerals until the grantees . . . are [sic] made whole." *See* 688 S.W.2d at 913-14.

We first note the obvious—*Blanton* predates *Dragon*. Accordingly, *Blanton's* application of *Duhig* in 1985—to the effect that an over-conveyance of an interest results in the grantor being estopped from asserting title to its reserved interest until the grantee is made whole—must now be viewed through the prism of *Dragon*. For *Duhig's* remedy to apply post-*Dragon*, the over-conveying grantor must own "the exact interest to remedy the breach *at the time of execution*." *Dragon*, 593 S.W.3d at 319. Here, the exact interest to remedy the Haynes grantors' failure of title in the 1952 NPRI deed would be a 1/2 mineral interest because they conveyed a 5/6

14

mineral interest to Madison when they only owned a 1/3 mineral interest. However, the Haynes grantors neither reserved a 1/2 mineral interest nor owned a 1/2 mineral interest because it was previously conveyed to Regan. Thus, under *Dragon*, the Haynes grantors did not own the exact interest to remedy their failure of title.

Substantively, the interest reserved by the Haynes grantors was a non-participating royalty interest and not a mineral interest. As we noted previously, an NPRI is carved from the mineral estate. *See Bradshaw*, 457 S.W.3d at 75. As a general rule, "the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty." *Wenske*, 521 S.W.3d at 797 (citing *Woods v. Sims*, 273 S.W.2d 617, 621 (Tex. 1954)); *Brooke-Willbanks*, 660 S.W.3d at 565; *see Benge v. Scharbauer*, 259 S.W.2d 166, 169 (Tex. 1953) ("The fractional part of the bonuses, rentals and royalties that one is to receive under a mineral lease usually or normally is the same as his fractional mineral interest. . . . "). But as noted in *Wenske*:

> Parties are free to contract for whatever division of the interests suits them. Their intent, as expressed in the deed, controls. If they want their agreement to operate differently from this basic principle of mineral conveyance, this Court has said they should "plainly and in a formal way express that intention." *Benge*, 259 S.W.2d at 169.

521 S.W.3d at 797; *see Brooke-Willbanks*, 660 S.W.3d at 565.

In *Benge*, a case involving an application of *Duhig*, the Texas Supreme Court held that the parties to a conveyance are not powerless to convey or reserve a royalty interest that differs from the fractional mineral interest that they own. 259 S.W.2d at 169. Thus, while the grantor's reservation of a 3/8 mineral interest was reduced by *Duhig* to a reservation 1/8 of the mineral estate, a 3/8 royalty interest payable to the grantor under the terms of the deed was not affected even though the grantor only owned 1/8 of the mineral estate after the court applied *Duhig*. *Id.* As applied to the facts in this case, the Haynes grantors were not required to own a corresponding

fractional interest of the mineral estate in order to reserve a 33.25/278.5 NPRI in the 1952 NPRI deed.

Because the NPRI reserved by the Haynes grantors in the 1952 NPRI deed is not the exact interest, either in nature or quantity, required to remedy the failure of their title that they conveyed to Madison, *Duhig* does not require that they and their successors are estopped from asserting title to the reserved 33.25/278.5 NPRI. *See Dragon*, 593 S.W.3d at 318–19. We sustain Appellants' first, second, and third issues.

*This Court's Ruling*

The trial court's final judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion.

JOHN M. BAILEY
CHIEF JUSTICE

August 17, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.